# CHARLESTON.

## CLARK et al. v. PERDUE.

Submitted January 19, 1895—Decided March 30, 1895.

1. EVIDENCE—COPY OF DEED.
   An office copy of a deed improperly admitted to record is not competent evidence.

2. EVIDENCE—EJECTMENT—POSSESSION—FORMER RECOVERY.
   Where an action of ejectment is brought by an adverse claimant against a tenant to recover possession of the premises, and judgment is rendered for such plaintiff against the tenant by default, and a writ of possession is executed by which the plaintiff is placed in actual possession, the possession is thereby changed, and the landlord is thereby actually turned out—in a second action of ejectment by plaintiffs, who derive title from the plaintiff in the first suit, against such landlord, sued as defendant, the record of the recovery in the former suit is competent evidence on behalf of the plaintiffs in the latter suit as showing or tending to show that the defendant's possession at that time was ended and changed by the execution of such writ of possession.

J. S. CLARK and A. W. REYNOLDS for plaintiffs in error, cited 32 Gratt. 107, 113; 27 W. Va. 762; 11 Gratt. 172; 1 Gratt. 211; 26 W. Va. 370; 54 Pa. 284; 105 Pa. 47; 144 Pa. 613; 160 Pa. 483, 492; 162 Pa. 114.

OKEY JOHNSON and A. C. DAVIDSON for defendant in error, cited 27 W. Va. 762; 11 Gratt. 172; 4 Munf. 382; 6 Munf. 433; Code 1868, c. 90, s. 35.

HOLT, PRESIDENT:

This is an action of ejectment brought in the Circuit Court of Mercer county on the 12th day of March, 1890, in which there was a trial on plea of not guilty, and verdict for defendant, Perdue; motion by plaintiffs to set the same aside and award a new trial overruled, and final judgment for defendant on the 15th day of January, 1892, to which this writ of error was allowed.

The plaintiffs assigned as grounds for new trial seven rulings made by the court during the progress of the trial, which they claimed to be erroneous, and to their prejudice. Two of these grounds are relied upon in argument here: "*First.* In the course of the trial the plaintiffs offered in evidence the record, including the judgment, writ of possession, and return endorsed thereon, in the action of ejectment of *W. H. Witten* v. *Silas Perdue et al.,* in connection with the testimony of R. C. Christie, clerk of the Circuit Court, and of W. H. Witten.

"*Second.* Plaintiffs also offered in evidence as a part of their claim of title and as color of title a certain deed from James Hector to Obadiah Belcher, and a deed from Obadiah Belcher to Chrispianos Belcher. The court refused to allow the record and the two deeds to be read in evidence to the jury, and plaintiffs excepted."

The plaintiff in an action of ejectment must recover on the strength of his own title, and the defendant is not called upon to give up the possession to any one who does not show himself to be the legal owner, unless he is in possession under the plaintiff's title, or has entered upon and ousted the plaintiff without title or authority.

The commonwealth being the fountain head from which ownership of land is mediately or immediately derived, the plaintiff generally begins by tracing back his title to the land in controversy to that source; and land in a state of nature of which no actual possession has been had he can, in general, recover in no other way. But where the land has been held in actual possession by himself, or by some predecessor under whom he claims, long enough to make the title good by adversary possession, he may show himself entitled to recover without being able to connect himself with the commonwealth. The order in which he introduces his claim of paper title is a matter generally left to his own convenience, and, although he may not be able to trace the legal title back from himself to the commonwealth by reason of the defective acknowledgment of some deed, or from any other cause, he is permitted nevertheless to go back as far as he can—in fact to introduce any and all the paper

titles he may have to the land in controversy—for the purpose of showing the nature of his claim, and the commencement and extent of his possession.

The first deed offered by plaintiffs and ruled out by the Circuit Court is a copy of a deed from James Hector to Robert Belcher, dated the 11th day of May, 1842, purporting to sell and convey a certain boundary of land supposed to contain one thousand five hundred acres, signed, sealed and delivered in the presence of three witnesses; but it was proved before the clerk by but two of the witnesses, whereas, as the law then was, it was necessary to be proved before the clerk or court by the three witnesses before it could be properly admitted to record. See 1 Rev. Code 1819, p. 362, §§ 1-6. The deed, therefore, not having been duly admitted to record, a copy from such record was not competent evidence. The second copy of a deed excluded by the court was of a deed made by James Hector to Obadiah Belcher, dated the 11th day of May, 1842, for two thousand five hundred acres, executed in the presence of three witnesses, but admitted to record on the 11th day of July, 1845, after being proved before the clerk of the County Court of Mercer county by the oaths of but two of them. Such copy was properly rejected as incompetent evidence for the same reason as the first, there being no law authorizing it to be admitted to record on proof by less than three witnesses. The Code of 1849, taking effect on the first day of July, 1850, was the first statute to reduce the number to two. See Code, 1849 (Ed. 1860) p. 569, c. 121, s. 2. The next paper offered in evidence by plaintiffs was an office copy of a deed dated May 12, 1842, from Obadiah Belcher to Chrispianos Belcher for one thousand five hundred acres, admitted to record on the 9th day of February, 1846, on proof before the clerk by but two of the three subscribing witnesses, which was also properly ruled out for the same reason. And, even if competent, there is nothing to show that they were relevant, for there is nothing on their face showing that they covered in whole or in part, the land in controversy; nor was any such proof offered, nor any statement made that plaintiffs expected to follow them up with any such evidence.

Did the court err in ruling out the record of recovery in ejectment of *Witten* v. *Silas Perdue et al.* had by judgment entered on the 5th day of May, 1873? That recovery by William H. Witten of Silas Perdue embraced the land in controversy. It was followed by a writ of possession, issued on the 19th day of May, 1873, which was executed on the 12th day of July, 1873, by the deputy sheriff of Mercer county, placing the plaintiff, William H. Witten, in possession of the land. There was evidence tending to show that when that suit was brought by filing the declaration and proof of the service of notice on defendant Obadiah Belcher on the 27th day of January, 1873, and on defendant Silas Perdue on the 28th day of January, 1873, Silas Perdue was in actual possession of the premises as tenant of George W. Perdue, the defendant here; and that George W. Perdue had actual notice of the bringing of that suit against his tenant. Defendant George W. Perdue claimed under a deed from Zachariah Perdue to him for fifty acres, dated 25th March, 1868, being part of a junior grant to Zachariah for four hundred and fifty acres, dated 31st day of May, 1849; and his claim was, and his own evidence tended to show, that under this deed for fifty acres he took actual possession of the land in controversy in 1868, and so held the same continuously until this suit was brought. There is certainly one ground upon which this record was relevant, and admissible in evidence: 1. It tended to show that defendant George W. Perdue had not had continuous, uninterrupted possession of the land since 1868; and (2) it, with the accompanying evidence, tended to show that there had been a judgment against him in favor of Witten, under whom these plaintiffs claim. Whether it is conclusive against him as to such title and right of possession may admit of grave doubt. Our statute on the action of ejectment (chapter 90, Codes 1868, 1891) abolishes the writ of right, and molds into the one action called "ejectment," simple and comprehensive, all the substantial provisions of former law, with such improvements as were found to be proper to disentangle justice from nets of form, preserve all the benefits of the writ of right and of the action of ejectment, as well as of all other actions, posses-

sory and droitural, and is also made comprehensive enough to try the mere right to real property, as well as the right of possession, and to determine it finally, being substantially a writ of right as much as an action of ejectment. See Report of Revisors of Code 1849, p. 691, note. Such statutory remedy prevails now pretty much everywhere throughout common-law countries, and, except where a second trial is given, is a conclusive and final determination as to the title or right of possession established in such action upon the party against whom it is rendered, and against all persons claiming from, through, or under such party by title accruing after the commencement of such action, except as thereinafter mentioned (see section 35, chapter 90, Code); and such conclusiveness and finality applies as much to a judgment by default as to one rendered on verdict found on issue joined, for section 12, chapter 90, says: "And if the defendant fail so to appear and plead, his default shall be entered and judgment given against him." Section 5, chapter 90, prescribes that "the person actually occupying the premises shall be named defendant in the declaration." If they be not occupied, the action must be against some person exercising acts of ownership thereon, or claiming title thereto, or some interst therein, at the commencement of the suit. If the lessee be made defendant at the suit of a party claiming against the title of his landlord, such landlord may appear, and be made a defendant with, or in the place of, his lessee. It is conceded that the action of ejectment of 1873 was governed by the law as it was under the Code of 1868, and it was held under the law as it then was (prior to the act of 1877) that the action could be brought only against the party in possession when the premises were occupied. *Johnston* v. *Mann*, 21 W. Va. 15. It was optional with the landlord, George W. Perdue, whether he would appear or not. The plaintiff could not make him a defendant, as the premises were then occupied by his tenant, Silas Perdue, as the plaintiffs in this suit claim, and as their evidence tends to prove; for the term, "actually occupying the premises," as used in the statute, is not confined to one who has his home and dwelling place upon the premises, but embraces one who

is in actual possession by the ordinary, continuing acts of ownership which has produced a change in their condition, giving them the appearance of being used. So the term is used in the cases of *Taylor* v. *Burnsides*, 1 Gratt. 165; *Overton* v. *Davisson, Id.* 211. And such actual possession once taken and held by fencing a field and cultivating crops is presumed to continue until the contrary appears; throughout the winter season—the month of January, for example, as in this case—although no visible use may then be made of the premises other than the fact of having it inclosed or fenced in. These plaintiffs claim by title regularly derived from William H. Witten by conveyances made since his recovery of the land in controversy by the judgment rendered on default against Silas Perdue in 1873. In that action of ejectment William H. Witten complained and averred that on the 1st day of January, 1873, he was seised and possessed in fee simple of a certain tract of land, giving the metes and bounds, which includes the land here and now in controversy; and, being so seised and possessed, the defendants Obadiah Belcher and Silas Perdue afterwards to wit, on the day and year aforesaid, entered upon said premises, and unlawfully withheld the said premises from the said plaintiff. The plea of not guilty would have put these facts in issue, and would have put plaintiff to the proof of such right to the possession of the premises at the time of the commencement of the suit, and such proof would have been necessary to uphold and justify such verdict and judgment. And the judgment by default against Silas Perdue was attended by the same legal consequences of conclusiveness as if there had been a verdict for the plaintiff (see 1 Freem. Judgm. § 330) for such is the language of our statute. It makes no distinction. See *Green* v. *Hamilton*, 16 Md. 317; 77 Am. Dec. 295, notes. George W. Perdue being the landlord, was the real party in interest, who could not, as the law then was, have been made a defendant, who would, however, have been the real party benefitted had there been a defense and judgment in favor of his tenant, or had he made himself a defendant, and obtained such judgment. Such a one, having an opportunity to make defense, and standing by and letting judgment against his

tenant go by default, would, under our then statute, seem to be as much bound and concluded as his tenant in possession (there being no fraud or collusion which vitiates such judgments) for the plaintiff could not make him a defendant, but he could enter himself as such, and make defense, if he saw fit. But the law has been changed, and now permits the plaintiff to make the landlord a co-defendant. See section 5, chapter 90, Code (Ed. 1891) p. 699.

Can it be said that this record is *res inter alios acta*, when the law did not permit the plaintiffs to make him a defendant, but did give the landlord such right, and the notice of the suit gave him the opportunity to controvert the plaintiffs' claim, and resist their demand? Still such a judgment by default against the tenant is so obviously dangerous, as being exceptionally open to the temptation of abuse with serious consequences, that if it were necessary to decide it, I should, as now advised, be reluctant to hold the landlord to have been a party to such first suit, within the meaning of the term as used in the statute, as this could only be done by construing the term "party," as used in section 35 of chapter 90, to comprehend the party in interest, and that the landlord in this case was a party by representation. But, without giving it a conclusive effect, there are other grounds upon which the competency of the excluded record can be safely rested, and among them the one first noted, viz.: that it proves Witten's possession and defendant George W. Perdue's want of possession in 1873, when the writ of possession was executed. See 2 Herm. Estop. p. 224, citing *Clarkson* v. *Stanchfield*, 57 Mo. 573; *Mitchell* v. *Davis*, 23 Cal. 381; *Chirac* v. *Rcinicker*, 11 Wheat. 280; *Jackson* v. *Hill*, 8 Cow. 294.

The evidence tends to prove that Silas Perdue was the tenant of George W. Perdue; and the judgment and writ of possession executed against Silas, putting the plaintiff Witten, who claimed in fee simple for himself, into possession, at least had the effect of interrupting and changing the character of the possession; and such record, as already stated, was to that extent and for that purpose relevant and material. See 2 Black. Judgm. § 577, citing *Stridde* v. *Saroni*,

21 Wis. 175; *Read* v. *Allen*, 58 Tex. 380; *Chant* v. *Reynolds*, 49 Cal. 213; *Read* v. *Allen*, 56 Tex. 176.

The pleadings in ejectment are broad and indefinite. They contain no recital of title.    The plaintiffs' chain of title shows that they claim under Witten, the plaintiff in the former action; and it is competent to show by parol that Silas Perdue claimed as tenant, and was in possession under George W. Perdue, at the time of Witten's recovery against Silas, for in no other way than by such parol helping evidence can the judgment be applied to its proper subject-matter, or what was decided be ascertained, and given its true legal effect, if any, between the parties to this suit.

·For the reason given, I am of opinion that the record in the action of ejectment of *Witten* v. *Silas Perdue* and the evidence of the witness Witten were improperly excluded, to the prejudice of the plaintiffs.    Therefore the judgment complained of must be set aside, and a new trial be awarded.