# CHARLESTON.

ARNOLD *et al. v.* BUNNELL *et al.*

(BRANNON, JUDGE, not sitting.)

Submitted June 22, 1896—Decided Nov. 28, 1896.

1. HUSBAND AND WIFE—PARTITION.

Where a wife becomes interested as a coparcener in a tract of land, inheriting the same from her deceased father, her husband, if he is entitled to curtesy by reason of issue of the marriage, can make a valid partition of the land with the other heirs of the decedent, either by written agreement, or by parol, or partly by writing and partly by parol.

2. HUSBAND AND WIFE—PARTITION—DEFECTIVE ACKNOWLEDGMENT.

If such husband and his wife attempt to make a deed for the portion of land so partitioned to a third party, which is void as to the wife by reason of a defective certificate of acknowledgment, the party to whom said conveyance is made will only take the life estate of the husband, and the wife or those claiming under her will have no right of entry until the death of said husband.

3. HUSBAND AND WIFE—PARTITION—STATUTE OF LIMITATIONS.

Where a wife is seised in fee of land not separate estate, and her husband makes a deed purporting to convey the fee, but void as to the wife, such deed vests in the grantee a life estate, either for the joint lives of the husband and wife, or by the curtesy according to the facts, and the statute of limitations does not begin to run against the wife's reversion until the termination of said life estate.

JOHN BRANNON and JOHN J. DAVIS for plaintiffs in error, cited 2 Bouv. Law Dic. 237; 1 Beach, Eq. Jur § 362; 8 W. Va. 515; 4 Min. Inst. 749; 26 W. Va. 345; 18 W. Va. 598; 2 Gratt. 319; 11 Gratt. 172; 27 W. Va. 762; 32 W. Va. 600; 36 W. Va. 490; 22 W. Va. 126; 101 U. S. 11; 5 Gratt. 110.

GEORGE J. ARNOLD for defendants in error:

I.—*Partition valid on all heirs of Sims including the married women and on Blairs.*—2 Lomax Dig. 96, § 10; 1 Tuck. 177; 15 Gratt. 376; 5 Gratt. 110, pt. 2; 42 Am. Dec. 275; 53 Id. 481; 17 Am. & Eng. Enc. Law, 662.

II.—*Racer as tenant by curtesy had right to make partition without his wife.*—2 Gratt. 340; 15 Gratt. 376, 378.

III.—*Absent heirs, Millie, Phoebe and Armistead, presumed dead at date of partition.*—Code 1860, 729.

IV.—*But dead or alive, partition binds them after so long time.* —5 Gratt. 63, syl. pt. 11; 5 Munf. 108.

V.—*Exclusive possession by Racer taking all profits so long, is adverse and bars other heirs.*—22 W. Va. 120, syl. pt. 15; 11 Gratt. 505.

VI.—*The partition known and acquiesced in by Hana Racer bound her though married.*—8 Gratt. 241; 22 W. Va. 120.

VII.—*Deed from Racer and wife to Blair recites that a partition had been made, and though, for want of good acknowledgment, it passed no legal title, yet it shows Hana Racer recognized partition, and the recitals bound her, as they bind parties and their heirs and alienees. The Blairs can not deny it.*—9 Gratt. 146; 6 Gratt. 277; 1 Greenl. § 23.

VIII.—*Declarations of Racer as to meaning of the words "remaining in them" in deed from Racer to Arnold not admissible.*—18 W. Va. 507; 41 W. Va. 314; 3 H. & M. 399; 2 Lom. Dig. 197, § 31; 11 Gratt. 434, 437.

IX.—*Racer held life estate, his wife remainder, and therefore the words "remaining in them" would be appropriate to pass the fee after life estate.*—5 Gratt. 513, 514; 15 Gratt. 376, 377.

X.—*Action not barred by limitation.* 1. *Because Racer's deed to Blair, void as to Hana Racer passing only Laban Racer's life estate, not her fee, for want of good certificate of privy examination.*—26 W. Va. 829; 3 W. Va. 163; 10 W. Va. 187, 198; 14 Gratt. 501.

XI.—2. *Because Mrs. Racer or Arnold claiming under her had no right to possession and could not sue until Racer's death, as Blair had an estate under his deed from Racer for the life of Laban Racer.*—Code, c. 104, s. 1; 36 W. Va. 356; 32 W. Va. 139; 22 Gratt. 228; 8 Gratt. 281, 285.

XII.—*Deed is construed most strongly against grantor.*—2 Lomax Dig. 179.

ENGLISH, JUDGE:

This was an action of ejectment, brought in the Circuit Court of Lewis county, by George J. Arnold, Cora Martin (late Cora Arnold) S. B. Hall, Porter W. Watson, and Charles A. Watson (the last two being infants, who sued by their next friend, John B. Watson) against F. N. Bunnell, Watson M. Bunton, Robert P. Underwood, J. M. Bennett, and James Crawford, to recover a tract of land described in the declaration as lying in said Lewis county, W. Va., on the left hand fork of the West Fork river and Laurel run, a tributary of said river, and containing ninety eight acres, setting forth the boundaries. There was also a separate count, in the name of S. B. Hall, for the recovery of the same land. The judge of that circuit court being so situated that it was improper for him to preside at the trial, Hon. Edwin Maxwell was elected special judge to try the same, but tendered his resignation at the same term, and on the 27th day of March, 1894, C. C. Higginbotham was elected special judge to try the same, and qualified as such. The following statement of the facts is taken from the petition of the plaintiffs in error:

The land in controversy appears to be a portion of a tract of one thousand two hundred and twenty acres which belonged to one John Sims, who died intestate some time in August or the latter part of the year 1851, leaving surviving him the following named children and heirs at law, *viz.:* Lucy (who married Job Houghton) Millie, Phœbe, Pendleton, Haney (who married Laban Racer) Margaret (who married S. H. Wilson) Mahlon Sims, John Sims, Armstead Sims, Alfred Sims, Joel Sims and J. H. Sims, who, at the death of said John Sims, became entitled by descent to said lands. That, just before or soon after the death of said John Sims, Samuel H. Wilson, who had married Margaret Sims, purchased the interests of John Sims, Alfred Sims, and Mahlon Sims in said lands, and that he and Laban Racer, Joel Sims and James H. Sims claimed, in their own right and in the right of their wives, to be the

owners of said one thousand two hundred and twenty acres, and as such proceeded to make partition thereof among themselves, and, in making said partition, the home place was assigned to Laban Racer, containing ninety eight acres, which ninety eight acres embraced the fifty eight acres in controversy in this suit, and claimed by Wilson Lewis, the lessor of appellants. That said Laban Racer and wife took possession of said ninety eight acres immediately after said division, and moved into the house where old John Sims lived, and continued to live there for several years, and until said Racer and wife moved to Putnam county, when one Alfred Holt entered into possession of said land under said Racer, and lived there for some time, becoming the purchaser of forty acres of said ninety eight acres. On the 5th day of June, 1867, Laban Racer and wife sold and conveyed to George Blair the remaining fifty eight acres of said tract. Said Blair took possession of said land in January, 1857, under his said deed from Racer and wife, and continued to hold, use, occupy, and exercise dominion and ownership over, said land until his death in 1861. After his death said Blair's widow and children continued to live on said land, and to use, cultivate, occupy, and hold the said fifty eight acres as their own, until some time in the year 1870, when partition was made of the lands of said George Blair among his children, and on the 9th day of November, 1870, John Blair and George M. Blair, the two sons of said George, and their wives, conveyed to Wilson Lewis, and as for the share of his wife, Rachel, a daughter of said George, in the lands of which he died seised, the fifty eight acres of land in controversy, and thirty one acres additional, from what is known as the "Wilson Lands," owned by said George, and said Lewis took possession thereof, and held the same uninterruptedly and continuously down to the date of bringing this suit. It further appears, from the record, that said Laban Racer died in the year 1885, and his wife, Haney, died some time previous; that, prior to the death of either of them, in order to cure some mistake in the deed to George Blair, the said Wilson Lewis procured the said Laban Racer and wife, on the 2d of February, 1874, to make him a deed correct-

ing the mistake or error either in the deed or the acknowledgment thereof from said Racer and wife to George Blair, and conveying to him (Lewis) said fifty eight acres, which deed was duly acknowledged and admitted to record in the clerk's office of the county court of Lewis county on the 2d day of March, 1874; that the deed of the 5th day of June, 1857, of Racer and wife to George Blair, was acknowledged by said grantors before Porter M. Arnold and John Crawford, two justices of Lewis county, on the 10th day of August, 1857; that, after the making of said deed to George M. Blair, by Racer and wife, the said Porter M. Arnold had the said Racer and wife, on the 24th day of July, 1860, and for the consideration of fifteen dollars, make him a deed conveying to him "all right, title, and interest they had remaining in them in a tract of one thousand two hundred and twenty four acres of land lying in the county of Lewis"; that said deed was not recorded until the 15th day of December, 1865; that, subsequent to the date of said deed, the said Porter M. Arnold died intestate, and on the 20th of December, 1861, the said Racer and wife made a deed to Laura Arnold, Cora Arnold, Leah Arnold, and George J. Arnold, Jr., children and heirs at law of said Porter M., conveying, or purporting to convey, to them "all their right, title, and interest, legal and equitable, in the tract of land lying on the left hand fork of the West Fork river, in Lewis county, the same of which John Sims died seised," which deed was admitted to record in the clerk's office of the county court of Lewis county on the 15th day of February, 1875. It also appears that, at the date of the making and recordation of the deed to him by said Racer and wife of the 2d day of February, 1874, the said Wilson Lewis had no knowledge of the making or the recordation of the deed to Porter M. Arnold on the 24th day of July, 1860, or of the deed to Laura Arnold and others on the 20th day of December, 1861, or either of them; that on the 8th day of March, 1875, Leah Arnold, who was then Leah Bennett, the wife of Joseph H. Bennett, and her said husband, made a deed to George J. Arnold, purporting to convey to him their interest in said lands mentioned in the deed from Racer and wife to Porter

M. Arnold's heirs; that on the 26th day of August, 1881, George J. Arnold, Jr., a son of said Porter, by deed conveyed his interest in said land to said George J. Arnold, Sr., that, on the 23d day of November, 1891, John B. Watson and his wife, who was a daughter of said Porter, conveyed their interest in said land to said George J., Sr.; that, on the 5th day of May, 1891, S. B. Hall and wife, who was a daughter of said Porter, conveyed their interest in said land to said George J. Arnold, said Hall having acquired the interest of William Martin and wife, who was a daughter, also, of said Porter M., in said land. It also appears from said record that Armstead Sims, a son of old John Sims, was not a party to the agreement made between Job Houghton, S. H. Wilson, Joel Sims, Laban Racer, and James II. Sims, nor was the said Armstead's share or interest in the one thousand two hundred and twenty acres of which his father died seised set apart to him, or acquired by any of the parties to said agreement by purchase from him; that George Blair died in 1861, leaving two sons, John Blair and George M. Blair, and one daughter, Rachel Lewis, the wife of Wilson Lewis, to survive him as his heirs at law. It further appears that on the first Monday in February, 1887, the appellees filed their declaration in ejectment against appellants and others to recover possession, among other lands, of the ninety eight acres which embraced the fifty eight acres the petitioners were in possession of as tenants of the said Wilson Lewis; that, at the March rules, there was an appearance and plea of not guilty filed, to which plea the plaintiffs replied generally. An order of survey was directed and executed, the death of Jonathan M. Bennett and Robert P. Underwood was suggested, and the case revived in the name of the heirs and devisees of said Bennett and of Charlotte Underwood, the widow of said Robert P. Underwood. At the March term, 1890, an amended declaration was filed, and the case continued, and on the 15th day of March, 1893, a judgment by confession was entered in favor of the plaintiffs against the defendants W. G. Bennett, Lewis Bennett, Gertrude B. Howell, Mary B. Bowie, and James Crawford for forty acres of the said ninety eight acres in controversy,

and as to the rest of the defendants the case was continued. On the 6th day of March, 1895, the appellants disclaimed all title and right to the possession of all the land in the plaintiffs' declaration except the fifty eight acres, and to the amended counts interposed the plea of not guilty. Issue was joined, the case was submitted to a jury, and, when the evidence on behalf of the plaintiffs and defendants was concluded, the plaintiffs demurred to the evidence adduced by appellants to support the issue on their part. There was joinder in said demurrer, and the jury found for the plaintiffs the said fifty eight acres if the law upon the demurrer should be for the plaintiffs, and, if not, then they found for the appellants. On the 14th day of March, 1895, they proceeded to determine the matter of law arising upon said demurrer, and judgment was rendered in favor of the plaintiffs and against appellants for said fifty eight acres of land as described in the judgment of the court, and thereupon appellants moved the court to set aside the judgment, so far as it related to said fifty eight acres, for errors of law therein by the court, which motion the court overruled, and the appellants excepted, and obtained this writ of error.

The first error assigned and relied on by the plaintiffs in error is that "it was error in the court not to set aside the judgment, and in overruling the motion of the plaintiffs in error asking that said judgment be set aside."

The sole question for our consideration in this case is whether the plaintiffs in this action were barred by the statute of limitations at the time their declaration in ejectment was filed on the first Monday in February, 1887. It appears, from the record, that one John Sims, a resident of the county of Lewis, died in the year 1850, owning in fee one thousand, two hundred and twenty four acres of land. At the time of his death, he had five sons and three daughters, named as follows: Mahlon, John, Alfred, James II., and Joel Sims; Lucy, the wife of Job Houghton; Haney, the wife of Laban Racer; and Margaret, the wife of S. H. Wilson—who were the heirs at law of John Sims, and to whom said tract of land descended. On the 8th day of March, 1851, an agreement was entered into between

Joel Sims, Job Houghton, James H. Sims, S. H. Wilson, and Laban Racer, which agreement was acquiesced in by the other heirs of said Sims, by which ninety eight acres of said land, known as the "Old Improvement of John Sims," by boundaries therein set forth, was partitioned to Laban Racer as the portion of his wife, Haney Racer, formerly Haney Sims. Said Laban Racer and his wife, Haney, in the year 1851, moved into the old Sims house, and claimed said ninety eight acre-tract under said petition, and lived upon and cultivated the same as their own until 1857, when said Laban Racer and wife, by deed dated the 5th day of June, 1857, undertook to convey fifty eight acres of said ninety eight acre-tract to George Blair, but, by reason of the defective acknowledgment of said deed by said Haney Racer, only the life estate of said Laban Racer in said tract was thereby conveyed; and on the 7th day of August, 1857, the remaining portion of said ninety eight acre-tract, to wit, forty acres, was attempted to be conveyed to Alfred Holt, but by reason of a defective acknowledgment only the life estate of said Laban Racer passed to said Holt. After the death of George Blair, as before stated, the children and heirs of said George Blair conveyed said life estate to Wilson Lewis, who took possession of said fifty eight acres, and held possession thereof down to the institution of this suit. It also appears that said Laban Racer and Haney Racer, his wife, by a deed dated the 2d day of February, 1874, attempted to convey to Wilson Lewis said fifty eight acre-tract by metes and bounds, in which it is recited that the same was assigned to her in a compromise or partition of the lands of John Sims, after having conveyed the same to Porter M. Arnold in July, 1860, and to his heirs at law in December, 1861. This constitutes the claim of title asserted by the plaintiffs in error. The claim of title asserted by the plaintiffs in this action commences with a deed made by Laban Racer and Haney, his wife, to Porter M. Arnold, dated the 24th day of July, 1860, by which the said Laban Racer and Haney, his wife, convey to said Porter M. Arnold all the right, title, and interest they had remaining in them in said tract of one thousand two hundred and twenty four acres that the late John Sims,

deceased, died seised of, which deed was properly executed and acknowledged by said Laban Racer and Haney, his wife. Said Porter M. Arnold died intestate, and on the 20th day of December, 1861, the said Laban Racer and Haney, his wife, made a deed to Laura Arnold, Cora Arnold, Leah Arnold, and George J. Arnold, Jr., children and heirs at law of said Porter M. Arnold, conveying to them all their right, title, and interest, legal and equitable, in said tract of land, which was also properly executed and acknowledged by said Laban Racer and his wife, which deed was admitted to record in Lewis county on February 18, 1875. On the 8th day of March, 1875, Leah Arnold, who was then the wife of J. H. Bennett, and her said husband, conveyed her interest in said land, to George J. Arnold, mentioned in said deed from Racer and wife to Porter M. Arnold's heirs. On the 26th day of August, 1881, George J. Arnold, Jr., a son of said Porter, conveyed his interest in said land to said George J. Arnold, Sr., and John B. Watson and his wife and S. B. Hall and wife, who were daughters of said Porter M. Arnold conveyed their interests to said land to George J. Arnold, said Hall having acquired the interest of William Martin and wife, who was a daughter of said Porter M., in said land, and on the first Monday in February, 1887, this action was commenced.

It is apparent that the parties under whom the plaintiffs in error claim this tract of fifty eight acres of land only derived from Laban Racer his life estate in said fifty eight acres of land, and the parties claiming under the deed made by Laban Racer, Haney Racer, his wife, to George Blair, only took and held such title as Laban Racer had in said tract, which estate terminated at the death of said Laban Racer in 1885. Laban Racer, having married Haney Sims, by whom he had children, was a tenant by curtesy, and entitled to make partition, as the law on this point is thus stated in 2 Lomax, Dig. side page 96, § 10: "It is to be observed that at common-law no deed of partition was necessary between coparceners. A parol partition was equally efficacious. A partition makes no degree between them. It only adjusts the different rights of the parties to the possession. There is no purchase. The parceners continue

seised by the title by descent from their ancestor.  A parol
partition was effectual, not only of inheritances lying in
livery, but of such as lie in grant." Freeman, in his valua-
ble work on Cotenancy and Partition, in section 396, says:
"In the case of joint tenants, voluntary partitions must at
all times have been by deed, except where the estate was
only for years, for there they might make partition with-
out deed"—citing 2 Cruise, Dig. 384; Co. Litt. 187a; Petersd.
Abr. 137, 141; Vin. Abr. tit. "Partition," D.  Between ten-
ants in common a voluntary partition could by the com-
mon-law be made by parol, provided it was executed in
severalty with livery of seisin.  2 Cruise, Dig. 110.  Parti-
tion by agreement between parceners may be made by law
between them, as well by parol without deed as by deed.
Vin. Abr. tit. "Partition," C.  In the case of *Otley* v. *M'Al-
pine's Heirs,* 2 Gratt. 341, it was held, if "a tenant by the
curtesy of lands purchases the reversionary interest of one
of three heirs, and another interest is held by infants, that a
court of equity will decree a partition of the land at the
suit of the tenant by the curtesy."  So, also, in the case of
*Poindexter* v. *Jeffries,* 15 Gratt. 376, Moncure, J., delivering
the opinion of the court, says: "A husband, by becoming
possessed of his wife's freehold estate of inheritance during
the coverture, acquires a freehold interest during their joint
lives if there be no issue of the marriage, and during his
own life if there be issue.  In the former case he and his
wife are seised in her right, and in the latter he is seised in
his own right as tenant by the curtesy initiate, and may
maintain an action in respect to his freehold interest in his
own name only."  And, having these rights, the said La-
ban Racer could, by the written agreement filed in the re-
cord, and by parol as to those who did not sign the same,
make partition of said land, which partition appears to
have been acquiesced in by his wife, as she recognizes and
acts upon and acquiesces in the boundaries of said fifty
eight acre-tract in the deed she attempted to make to Wil-
son Lewis on the 2d day of February, 1874; but a deed
made by him to a third party for the tract of land so parti-
tioned would convey only his life estate, unless joined in
and properly executed by his wife, and those accepting

such deed and holding under him would only be entitled to his life estate in the land.

As has before been shown, the fee simple estate of said fifty eight acre-tract of land was conveyed by Laban Racer and wife to Porter M. Arnold, and to the children and heirs at law of Porter M. Arnold, and by them was conveyed to George J. Arnold, the plaintiff in this case, while the life estate of Laban Racer was conveyed by successive conveyances to the defendants, and, although the parties holding said life estate were in possession thereof, the statute of limitations did not commence to run in their favor until the death of Laban Racer, which occurred in the year 1885, his wife having previously died. So in the case of *Merritt* v. *Hughes*, 36 W. Va. 356 (15 S. E. 56)—third point of syllabus—this Court held that, "where a wife is seised in fee of land not separate estate, and her husband makes a deed purporting to convey the fee, but void as to the wife, such deed vests in the grantee a life estate, either for the joint lives of the husband and wife, or by the curtesy, according to facts, and the statute of limitations does not begin to run against the wife's reversion until the termination of such life estate."

In the case we are considering, the husband only had a life estate by curtesy, and as a matter of course that was all he could convey. The acknowledgment of the wife to the deed, being defective, rendered the same inoperative as to her, and she retained the fee, which was afterwards conveyed by successive conveyance to the plaintiff in this suit, who had no right of entry during the continuance of the life estate. See *Land Co.* v. *Laidley*, 32 W. Va. 135 (9 S. E. 61) where it was held (point 5 of syllabus) that where, by deed, land was conveyed directly to a married woman, prior to the Code of 1868, such conveyance did not create in her a separate estate, but the husband became entitled to a freehold estate in the land, which would continue, at least, during the joint lives of the husband and wife, with remainder in fee to the wife. Also (point 6) "In such case, if the husband and wife, by deed void as to her for want of a proper certificate of her examination and acknowledgment, convey the land to a party, and put him in possession, such pur-

chaser is entitled to hold that possession until the death of the husband, and the wife or her heirs, or any one claiming under them, has no right of entry until the husband's death, and right of action does not accrue to them, nor does the statute of limitations run against them until his death." That this certificate of acknowledgment was fatally defective, see *Henderson* v. *Smith,* 26 W. Va. 829; *Lynn* v. *Patton,* 10 W. Va. 187 (second point of syllabus) also, *Grove* v. *Zumbro,* 14 Gratt. 501.

It is clearly shown, from the evidence, that Laban Racer and Haney, his wife, took possession of the ninety eight acre-tract in pursuance of the agreement for partition. To this no objection appears to have been made by any of the other heirs of John Sims. Forty acres of the ninety eight was conveyed to Alfred Holt, leaving the tract of fifty eight acres in controversy. This fifty eight acres was taken posession of and held by George Blair under the deed of June 5, 1857, said deed conveying merely the life estate of Laban Racer; and those holding under said George Blair merely took the life estate of said Laban Racer in said fifty eight-acre boundary of land; and the deed made by Laban Racer and wife to Wilson Lewis, February 2, 1874, conveyed nothing more, as they had, in 1860, parted with all interest in the land to Porter M. Arnold. Haney Racer, by joining the deed to Porter M. Arnold for all the right, title, and interest they had remaining in said one thousand two hundred and twenty four acres of land, surely intended her fee simple right in remainder in and to the fifty eight acre-tract, because she had signed the deed which conveyed the life estate of Laban Racer in said tract to George Blair, which conveyed said tract to said George Blair by metes and bounds. Of these recitals she had notice, and the said George Blair and all claiming under him had notice, also. See *Wiley* v. *Givens,* 6 Gratt. 277, where it is held the recitals in a deed, though evidence against the grantor and all claiming under him, are not evidence against third persons claiming, not under, but adversely to, the deed. The defendants here are claiming under this deed, and the recitals show what fifty eight acres were meant. Haney Racer, wife of Laban Racer, knew

that the life estate of Laban Racer had been conveyed to George Blair, and, in conveying all the right, title, and interest they had remaining in said one thousand two hundred and twenty four acres of land, could have meant and intended nothing else but her remainder in fee. There was no latent ambiguity in the deed of Racer and wife to Porter M. Arnold. The said Laban Racer and Haney Racer, by their acts in acquiescing in the partition which gave them said ninety eight acres of land, precluded themselves from setting up any further claim to said entire John Sims tract.

I therefore think the trial court committed no error in refusing to hear proof as to what Laban Racer stated, on the 2d day of February, 1874, was the intention by employing the words, "remaining," *etc.*, in the deed of himself and wife to Porter M. Arnold, of the 24th of July, 1860; and for the same reason I think the trial court committed no error in refusing to allow the question mentioned in bill of exceptions No. 3 to be read to the jury.

It is claimed, further, that the court erred in rendering judgment against the defendants, because the said Racer and wife's, as well as the plaintiff's right of entry, was barred by the statute of limitations. We have, however, seen that the plaintiff's right of entry did not accrue until the death of Laban Racer in 1885, his wife then being dead, and the plaintiffs, claiming the remainder in fee under her deed, could not enter or bring suit for the recovery of the land until the termination of the life estate; and our conclusion is that the right of action was not barred at the time of the institution of this suit, that there is no error in the judgment complained of, and the same is affirmed, with costs, *etc.*