**UNITED FUEL GAS CO. v. DYER et al.**

**No. 6119.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1950.

Decided Nov. 8, 1950.

Claude E. Goodwin and William C. Battle, Charleston, W. Va. (J. M. Harper, Spencer, W. Va., and Bernard J. Pettigrew, Charleston, W. Va., on brief) for appellant.

A. G. Stone, Charleston, W. Va. (Donald O. Blagg, Paul N. Bowles, and Rummel, Blagg & Stone, all of Charleston, W. Va., on brief) for appellees.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

### PARKER, Chief Judge.

This is an appeal from a judgment for plaintiffs in a suit for a declaratory judgment to the effect that plaintiffs are the owners of the mineral interests underlying a tract of land in West Virginia and for the cancellation as a cloud upon title of a deed from defendant's predecessors in title severing the mineral interests and conveying the surface interests to another. The case was heard without a jury and there is no dispute as to the controlling facts. Plaintiffs admitted that the documentary title of defendant was superior to their's but based their claim on adverse possession under color of title for the statutory period. Defendant denied that plaintiffs had ever acquired title to the mineral rights in controversy and claimed also that their rights if any had been forfeited under provisions of the Constitution and statutes of West Virginia relating to taxes and tax sales. In the view that we take of the case, it is necessary that we consider only the questions relating to adverse possession.

The facts are fully set forth in the opinion of the court below, see 90 F.Supp. 859 and need not be repeated here. Those necessary to an understanding of the question which we think decisive of the case are as follows: The mineral rights in controversy are those underlying a tract of land containing 181¾ acres which was embraced in a boundary of 31,000 acres granted by the Commonwealth of Virginia to one Samuel Smith in 1797. Defendant claims title through mesne conveyances under this Smith grant. Plaintiffs claim under a junior grant to one George Hinkle in 1850. Their claim to adverse possession is based upon (1) possession had by one John Neece who entered into possession of the land in 1868 under an oral contract of purchase, claiming under George Hinkle, and continued thereon until 1880, and (2) under possession had by John Dyer and those claiming under him since that date.

Dyer entered into possession of the land under a deed from the heirs of George Hinkle in the year 1882. Shortly thereafter an oral partition was agreed upon between him and Neece and the 181¾ acre tract was allotted him in the partition. He and those claiming under him have been in possession of the surface of the land since that time but have never at any time exercised any dominion or control over the mineral rights and have asserted no claim thereto except as this may be involved in possession of the surface.

In 1874, an action in ejectment was instituted by one Low and others, claiming under the Smith grant, against Neece and others claiming under Hinkle, but process in the action was not served upon Hinkle. Judgment in favor of plaintiffs and against Neece and others was entered in an action in June 1879 and writ of possession was issued on the judgment, but the writ was not served and Neece remained in possession. In August 1879, an attorney in fact of Low and his co-plaintiffs who had prevailed in the lawsuit executed a deed to Neece conveying to him the surface of a large tract of land embracing the 181¾ acre tract here involved, but reserving all minerals. This deed was signed and acknowledged by the attorney in fact of the grantors and was duly filed for record in the office of the Clerk of the County Court. It appears not to have been signed by Neece although a form reciting that he had signed it was appended thereto but was not executed. After the execution of this deed, the heirs of Hinkle conveyed to Dyer land embraced by the Hinkle grant and the oral partition above mentioned was agreed upon between Dyer and Neece allotting to Dyer the 181¾ acre tract.

Defendant's contentions with respect to the adverse possession claimed by plaintiffs are (1) that Neece's possession did not ripen title because it was interrupted by the ejectment suit before it had continued for ten years, and (2) that the possession beginning with Dyer cannot avail plaintiffs because prior to its commencement the mineral rights had been severed from the surface and the possession of Dyer and those claiming under him extended only to the surface. We think that these contentions must be sustained.

The learned judge below correctly held that Neece's possession did not mature title by adverse possession for those claiming under Hinkle, as contended by plaintiffs. There can be no question but that the institution of the ejectment suit against Neece interrupted his possession before the expiration of the statutory ten year period, and thus prevented its maturing title for anyone. Wade v. McDougle, 59 W.Va. 113, 52 S.E. 1026. As said by the Supreme Court of Appeals in the case cited: "A verdict and judgment in ejectment by which the plaintiff recovers the contested land destroy all title in the defendant at the date of the judgment. The defendant, by adverse possession beginning after judgment, may acquire title; *but possession prior to the judgment cannot be considered.*" (Italics supplied.)

The contention of plaintiffs is that the title of George Hinkle was matured by Neece's possession and that Hinkle, not having been served with process in the suit against Neece, is not bound by the judgment rendered in that case. For this position they rely upon cases to the effect that a landlord is not bound by a judgment in an ejectment suit against one in possession of the land as his tenant. See Huntington v. Dickinson, 4 Cir., 258 F. 431, 433; King v. Davis, C.C., 137 F. 198, 219. Neece however, was not the tenant of Hinkle. He was the vendee of the land in possession thereof under a contract of purchase and was unquestionably the proper person to make defendant in the ejectment suit. Code of W.Va. of 1868, ch. 90, sec. 5; Clark v. Perdue, 40 W.Va. 300, 21 S.E. 735. The judgment entered therein was binding upon Hinkle and those claiming under him because of the privity of estate existing between him and his vendee. See 30 Am.Jur. 958; Fleming v. Monongahela Ry. Co., 82 W.Va. 1, 95 S.E. 819. Even though Hinkle should be held not to be bound by the adjudication of title in the suit against Neece, see Clark v. Perdue, supra, he and those claiming under him are certainly bound by the adjudication therein

as to Neece's possession when they seek to claim a right under and by virtue of that possession. It is unthinkable that the possession of a vendee of land should be held to mature title in his vendor notwithstanding that such possession has been adjudged unlawful in a suit brought against the vendee by the true owner. The law sanctions no such absurdity.

■ With respect to the adverse possession beginning with John Dyer, we think that the judge below correctly held, for reasons which he has adequately stated, that the deed from the attorney in fact of Low and others to Neece effected a severance of the mineral interests in the lands from the surface rights prior to the time that Dyer entered into possession. This being true, the law in West Virginia is well settled that adverse possession of the surface, and this is all that Dyer and those claiming under him had, does not affect the rights of those owning the mineral interests. Bennett v. Neff, 130 W.Va. 121, 42 S.E.2d 793; Putnam Co. v. Fisher, 128 W. Va. 383, 36 S.E.2d 681; Central Trust Co. v. Harless, 108 W.Va. 618, 152 S.E. 209; Thomas v. Young, 93 W.Va. 555, 117 S.E. 909; White Flame Coal Co. v. Burgess, 86 W.Va. 16, 102 S.E. 690; Kiser v. McLean, 67 W.Va. 294, 67 S.E. 725; Plant v. Humphries, 66 W.Va. 88, 66 S.E. 94; Wallace v. Elm Grove Coal Co., 58 W.Va. 449, 52 S.E. 485; Huntington Development Co. v. Stewart, 4 Cir., 44 F.2d 119, 120; Stowers v. Huntington Development & Gas Co., 4 Cir., 72 F.2d 969, 972. In the case last cited, Judge Soper, speaking for this court, stated the West Virginia rule as follows:

"Under the West Virginia law, adverse possession of land for ten years may give good fee-simple title thereto, section 5393, Code of 1932; and the presumption is that the party, having possession of the surface, has also possession of the subsoil; but this presumption does not exist when the surface and subsoil rights have been severed, and in such case the surface rights only are acquired by adverse possession. Huntington Dev. & Gas. Co. v. Stewart, 4 Cir., 44 F.2d 119; Vance v. Clark, 4 Cir., 252 F. 495; Miller v. Estabrook, 4 Cir., 273 F.

143; Kiser v. McLean, 67 W.Va. 294, 67 S.E. 725, 140 Am.St.Rep. 948. In the last-mentioned case it was specifically held that oil and gas, severed in title from the land under which they lie, are not in possession of the owner of the surface, unless he takes actual physical possession of them, as by the drilling of wells."

That the general rule is to like effect, see 36 Am.Jur. p. 308, 58 C.J.S., Mines and Minerals, § 135, p. 223, 224.

■ We think that the learned judge was in error in holding that, where those in possession of the surface had no notice of the severance, adverse possession of the surface was effective to ripen title to the minerals, even though there had been a severance of the mineral interests. We agree that plaintiffs are not charged with notice of the deed to Neece which effected the severance because it was not in their chain of title. Code of West Virginia of 1949, sec. 3999; Webb v. Ritter, 60 W.Va. 193, 54 S.E. 484, 498; Gill v. Colton, 4 Cir., 12 F.2d 531, 534; 45 Am.Jur. p. 474. But we do not think that notice of the severance was necessary to protect against the effect of possession which did not extend to the mineral rights. No case is cited which supports such a holding and we know of none. It is said that the cases which hold adverse possession after severance of mineral interests to be presumptively limited to the surface are cases in which the severance deed was in the chain of title under which the adverse possessor claimed or there were other circumstances indicating that he had notice of the severance. In West Virginia, the adverse possessor is charged with notice of a severance appearing in his chain of title and by virtue of statute a deed effecting a severance is not binding upon a subsequent grantee without notice unless it is recorded; but there is nothing in this that requires notice to an adverse possessor not claiming under the same chain. Such adverse possessor is manifestly not entitled to any notice with respect to the estate of the true owner which he is invading. On the contrary, it is he who must give notice by exercising possession of such character as will apprise

the true owner that the right of the latter is challenged. As said in Guthrie v. Beury, 82 W.Va. 443, 96 S.E. 514, 516:

"A deed, though executed in due form by one not having authority to convey and delivered to the grantee and recorded, is not of itself sufficient to work an ouster in the absence of an actual notice to the real owner of an adverse claim and possession thereunder, and if there be such a possession, it must be so notorious, exclusive, and hostile as to give notice to such owner or put him upon inquiry as to the right under or by which such dominion is exercised."

It is said that the ordinary rule that possession of the surface is presumed to extend to the underlying minerals should apply where there has been a severance if the surface possessor has no notice thereof. We think, however, that, if the person occupying the surface is rightfully in possession, it is reasonable to presume that he intends to possess no more than is lawfully his. See Lewis v. Covington, 130 N.C. 541, 41 S.E. 677. Here Dyer was rightfully in possession of the surface of the 181¾ acre tract; for this had been conveyed to Neece by the true owner and Neece had put Dyer in possession thereof as a result of the oral partition. But even if the oral partition be ignored and the possession be regarded as wrongful, the position of plaintiffs is not helped; for certainly the fruits of wrongful possession should be limited to what has been actually possessed. It would seem clear that, in either event, the rights of the adverse possessor should not be enlarged nor the rights of the true owners diminished by lack of knowledge on his part, when he has done nothing to put them on notice that he is claiming their property or to subject himself to suit at their hands. As said in 36 Am.Jur. p. 432:

"There is a presumption that one in possession of the surface of mineral land also possesses the subsoil rights. But this presumption exists only where the surface and the mineral estate remain unsevered, and so it may be rebutted by showing a distinct title to the surface estate in one person and that which is underneath in another."

Very much in point here are the cases dealing with adverse possession under color of title of part of a tract of land owned in separate tracts by different owners or cases of adverse possession of land which is subject to an outstanding life estate. In such cases it is held that possession will not avail to ripen title except against those whose estate has been actually invaded by the possession. Thus, where an occupant's boundary covers adjoining lands of separate owners, his possession on the land of one will not, on the theory of constructive possession, be deemed adverse possession of the land of the other. McNeely v. South Penn Oil Co., supra, 52 W. Va. 616, 44 S.E. 508; Chilton v. White, 72 W.Va. 545, 78 S.E. 1048. And where there is possession of land subject to a life estate, the statute of limitations does not run against remaindermen until the life estate has terminated for, until then, the possession is not adverse as to them. McNeely v. South Penn Oil Co., supra; Arnold v. Bunnell, 42 W.Va. 473, 26 S.E. 359; Merritt v. Hughes, 36 W.Va. 356, 15 S.E. 56. The severance of the mineral interests here divided the total interest in the land into separate estates just as truly as if the land had been divided into separate tracts or a life estate had been created with remainder afterward; and the possession of the surface was not adverse to the ownership of the mineral interests because it did not extend to those interests so as to give notice to the owner thereof that his rights were being invaded or subject the possessor to suit at his hands, which is the crucial test of adverse possession. McNeely v. South Penn Oil Co., supra.

There is nothing to the contrary in Gill v. Colton, 4 Cir., 12 F.2d 531. That was a suit in equity to establish an alleged lost and unrecorded deed effecting a severance of mineral interests against an owner of land who had purchased same without knowledge of the severance. This court held that plaintiff was not entitled to equitable relief upon a number of grounds, one of which was that the subsequent purchaser, against whom the relief was asked, had no notice of the lost and unrecorded deed affecting his title. There is nothing in this

to support the position that, in the absence of notice, adverse possession of the surface of land will mature title to mineral interests that have been severed. Nor are plaintiffs helped by the cases of Interstate Coal Co. v. Clintwood Coal & Timber Co., 105 Va. 574, 54 S.E. 593, or Clement v. Texas Co., Tex.Civ.App., 273 S.W. 993, upon which they rely. In the former, the instrument relied upon as effecting the severance of mineral interests was never executed and the question was one of limiting the effect of the possession of the surface possessor. The latter holds merely that the severance of mineral interests by the deed of an adverse possessor will not deprive his subsequent possession of the surface of the effect that it would otherwise have in perfecting title.

For the reasons stated, the judgment appealed from will be reversed.

Reversed.