# CHARLESTON

## STATE v. BLAIR.

Submitted February 18, 1908.    Decided February 25, 1908.

| 63 | 635 |
| f65 | 603 |

| 63 | 635 |
| 66 | 488 |

1. LARCENY—*Indictment—Description of Property.*

   The terms "one man's saddle" and "one horse" are, in an indictment for larceny, sufficient description of the property alleged to be stolen.   (p. 636.)

2. CRIMINAL LAW—*Bill of Exceptions.*

   A bill of exceptions to become a part of the record must, if made in term, be plainly recognized by the record as such; and, if made in vacation, within the time allowed by law, must be certified by order duly entered of record as required by statute. (p. 637.)

3. SAME—*Judgment of Conviction—Erroneous Entry.*

   The mere inadvertence of entering a judgment at law in the book used for the entry of chancery orders and decrees by the same court does not, as between the parties, invalidate or affect such judgment. It is a sufficient memorial for the enforcement of the judgment, or appeal therefrom by writ of error. (p. 639.)

Error to Circuit Court, Mingo County.

Harrison Blair was convicted of larceny, and brings error.

*Affirmed.*

F. H. EVANS, for plaintiff in error.

CLARKE W. MAY, Attorney-General, for the State.

ROBINSON, JUDGE:

By this writ of error, Harrison Blair complains that he has been convicted and held for petit larceny, (1) upon an insufficient indictment, (2) upon a verdict contrary to law and the evidence, (3) by a void judgment.

The indictment charges the larceny of one man's saddle, of the value of $7, and one horse, of the value of $15, of the goods and chattels of another. By motion to quash, which was overruled, exception is taken to the terms used in describing the property as aforesaid. It is contended that they are general and not sufficiently specific. This is not tenable. The indictment sufficiently describes the property. It states with reasonable certainty what is alleged to have been stolen. Bishop, Crim., Pro., Vol. 2, section 700, says: "Assuming value and ownership to be duly alleged, the following expressions descriptive of the thing are severally sufficient: 'one sheep,' 'a horse,' 'a certain mare,' 'one certain hog,' 'a certain yellow and white pied beef steer,' 'one cow' (under which words the State may prove the animal's color and description), 'one watch,' 'one bolt of domestic, made of cotton,' 'a parcel of oats' (a form not to be commended) 'one hide,' 'one bull tongue' (being the name of a peculiarly shaped ploughshare), 'one pair of buckskin gloves,' (but not proved by evidence that they were of sheepskin), 'six towels,' 'fifty pounds of flour,' 'one feather bed,' 'a book.'" Authorities are there cited for each of the foregoing descriptions.

We are precluded from consideration of the assignment that the verdict is contrary to law and the evidence, because the evidence is not properly before us. While the testimony is printed in the record, it is not embraced in, or certified by, a bill of exceptions according to the plainly announced

procedure pertaining to such particular. There is, though, that which purports to be a bill of exceptions; but nowhere is it recognized by the record as such. It is, therefore, not made part of the record, and cannot be considered. If it was in term, the record does not refer to it; and, if made in vacation, within the time allowed by law, there is no order certifying same and thereby making it part of the record, as required by statute. *Wells* v. *Smith*, 49 W. Va. 78. Besides all this, we observe it to be a faulty skeleton bill of exceptions, so often met with in this Court, despite the frequent and emphatic announcement of the proper course to be pursued in such behalf. In it there is a space left, with the words: "(Here Insert Evidence)." But such evidence is not inserted. Some is printed in the record separate and apart; and, alone, purports to belong to no bill of exceptions. The bill aforesaid does not even undertake to identify the evidence appearing before us as that mentioned by it. This is all abortive and directly violative of the well recognized rule expressed in *Tracy's Admx.* v. *Carver Coal Co.*, 57 W. Va. 587.

Is the final judgment, that of fine and imprisonment, entered upon the verdict of the jury, invalid because a note by the clerk shows that it was entered in the chancery order book? Defendant so insists. The novel situation of a judgment of conviction in a criminal proceeding being so entered has, we confess, given us much serious concern. But, upon research and reflection, such concern appears to arise only by reason of the almost sacred distinction so long maintained in this jurisdiction between procedure at law and in chancery. In this incident, however, a question of distinction in procedure is not involved. It must be conceded that the procedure in this criminal case was at law. Simply the final order was entered out of the accustomed place for orders of that character to be entered. Was this error? May we not well consider it mere inadvertence? Certain it is, the judgment was entered, regularly, we may say, in every way but in the wrong book. Suppose it had not been entered at all; it would be none the less a judgment, pronounced, as it evidently was, by the court. "The rendition of a judgment is a judicial act; its entry upon the record is merely ministerial. A judgment is not what is entered, but

what is ordered and considered. The entry may express more or less than was directed by the court, or it may be neglected altogether; yet in neither of these cases is the judgment of the court any less *its* judgment than though it were actually entered. In the very nature of things, the act must be perfect before its history can be so; and the imperfection or neglect of its history fails to modify or obliterate the act. That which the courts perform judicially, or orders to be performed, is not to be avoided by the action or want of action of the judges or other officers of the court in their ministerial capacity." Freeman on Judgments, section 38. It is observed that the entry is not the judgment, but only the written history or evidence of it. Such memorial may be necessary to the enforcement of, or appeal from, the judgment, but not to its existence in fact. By the unusual entry in this case, we have a memorial of the judgment, quite as sufficient for evidence of such judgment as if it had been entered in the law order book where the other proceedings in the case are recorded. What matters as to the book, if there is such memorial for evidence of the court's pronouncement?

We have used the words "wrong book." But in what sense was it the wrong one? Shall we say legally wrong? We find no direct authority of law for separate books in our circuit courts to be kept, in law and in chancery. True, the unwritten law, or approved custom, has so been since the organization of these courts. And not for a moment would we do aught to disturb the distinction, even by keeping separate records, between proceedings at law and in chancery so honored and approved in the Virginias. May it always be as closely observed as in the years long past. It tends to regularity, certainty, and convenience. Let it not be said of us that "an ungrateful generation hath forgotten the memories of its fathers." But notwithstanding this honored distinction in the records, our codes since 1849 have provided simply, as our present statute does, that: "The proceedings of every court shall be entered in a book and read in open court by the clerk of the court." Chap. 131, section 4. When the old county courts had both law and chancery jurisdiction, it was usual to enter all orders in one book. The circuit courts have always used one for law and

one for chancery.   This Court keeps but one book, enter-
ing in it both law and chancery proceedings.   The separate
entry of judgments and decrees seems more to have been a
custom, growing out of the distinction between the two
jurisdictions, than a compliance with direct warrant of law.
And all this, notwithstanding the statute has placed judg-
ments and decrees on practically the same footing.   Then
shall we say that the mere entry of a judgment at law in a
book for chancery proceedings makes such judgment void,
or that it is not evidence of such judgment?   We shall not
so hold.   The label of the book cannot affect the solemnity
and finality of the court's action, as between the parties.
Questions of notice to third parties may arise, in such in-
stances, but they are not here involved.   Since the memorial
of such judgment is as clear and serviceable, between the
parties, entered in the one book as in the other, we must give
to it that which all the entries appearing in the book in which
it is found are given, validity and stability as evidence of the
solemn action of the court.   Where there is such substantial
memorial of the judgment, there is sufficient evidence of it on
which to base its enforcement, or to appeal from it by writ
of error.

In the foregoing conclusion we are sustained by the au-
thorities generally.   Says Black on Judgments, section 111:
" When the clerk is directed by law to keep certain books
for the entry of judgments, or to record judgments in a
book specially designated by statute for that purpose, and
deviates from the course prescribed, then in either case, for
reasons sufficiently stated in the preceding section, the va-
lidity of the judgment is not thereby impaired between the
parties.   As concerns third persons the case might be differ-
ent."   In *Thompson* v. *Bickford*, 19 Minn. 17, it is held,
that where, notwithstanding the adoption of a code of civil
procedure in that state merging legal and equitable forms in
one form of action and providing for a "judgment" only
as the determination of issues, the clerk of a certain court
kept two books, one labelled "judgment-book," the other
"decree-book," and was accustomed to enter causes of legal
cognizance in the former and equity causes in the latter, a
judgment of foreclosure was not impaired by the fact that it
was entered only in the "decree-book."   The error in the

label was a mere irregularity, which could not affect the rights of the parties. In *Bond* v. *Citizens Nat. Bank*, 65 Md. 498, it is held that the entry of judgment in the "permanent judgment record" in the first instance, and without any previous entry thereof in the "trial docket," as required by the ordinary practice of trial courts, does not render the judgment illegal or so irregular as to require it to be stricken out. *Work* v. *N. P. R. Co.*, 11 Mont. 514, holds: "Where judgments are required to be entered by the clerk in a record of the court to be called the 'judgment book,' the entry of a judgment in a book designated as 'journal of proceedings,' though irregular, does not impair or invalidate the judgment as between the parties to the action." Upon this subject, Freeman on Judgments, section 41, says: "If, as in California, the clerk is required, in addition to the judgment-book, to keep a 'register of actions,' and he neglecting to keep the first named, copies judgments in the latter they are not invalid. The substantial purpose of the statute is accomplished although the two books are united. No harm results to any one from this union; but, independent of the considerations named, the judgment should be sustained. If, as the authorities state, judgments are valid when not entered in any book, they surely ought to be equally valid if entered in some record of the court, though not in the one designated for that purpose." These are by no means all the authorities upon the subject, but they are sufficient to show the trend of judicial holding, that entry in the improper book does not of itself invalidate the judgment, but that it is a mere irregularity.

Again we say that there is not a question of distinction between procedure in the proper forum, whether it should be at law or in chancery, involved in this case. Such was the question before this Court in the cases of *Ruhl* v. *Ruhl*, 24 W. Va. 279; *State* v. *Irvin*, 30 W. Va. 404; and *Alderson* v. *Commissioners*, 32 W. Va. 640. But no point arose in those cases as to the validity of a single law order improperly entered in the chancery order book in a case where all the proceedings, trial, and judgment were properly had on the law side of the court, and all record entered there but a single order, improperly entered elsewhere. In the cases aforesaid, it was simply held that contempt proceedings

being in their nature criminal were properly cognizable at law, and it was error not to separate such case from a chancery cause in which it arose, and carry it on at law. They say, in effect, that contempt cases arising out of chancery causes cannot be carried on in chancery. The references in them to error in entering the orders in the wrong book, we do not understand as meaning reversible error for that alone, but such wrong entries are referred to as showing the cognizance of the wrong jurisdiction of the court, which erroneous cognizance was error. But there is not the least pretense in the case before us that cognizance of it was taken by the wrong jurisdiction of the circuit court. It is shown that the proper jurisdiction was invoked, and the case there prosecuted and defended. The mere irregularity is that the final order or judgment, while formally entered, preserved, and memorialized, is not so done in the accustomed book, but in another book of equal dignity as a record of a different class of proceedings by the same court,

We are of opinion to affirm the judgment, directing, however, for the sake of regularity to the ancient, well recognized, and commendable practice of separate books of entry for law and chancery in the circuit courts, that the judgment heretofore entered and memorialized as aforesaid, be entered in the law order book of the court below, *nunc pro tunc.* It will be so ordered.

*Affirmed.*