## White, et al. v. Pond Creek Coal Company, et al.

(Decided November 30, 1923.)

### Appeal from Pike Circuit Court.

1. Lis Pendens—Effect of Entry of Judgment as Against Lis Pendens Purchaser Stated.—The lis pendens doctrine is not affected by the fact that the subsequent judgment was the result of an agreement or compromise, provided the settlement adjusted matters involved in the litigation at the time of the purchase; but, where the agreed judgment is based on grounds not relied on at that time, but arising afterwards, the lis pendens purchaser is not bound thereby.

2. Parties—Permitting Lis Pendens Purchasers to Appear in Action Discretionary.—One acquiring an interest in land pendente lite is sometimes, on his application, permitted to appear in the action and defend or prosecute in the place of the person to whose interest he has succeeded, but the court is not bound to permit him to do so.

3. Parties—No Abuse of Discretion in Refusing to Permit Lis Pendens Purchaser to Intervene.—The court was justified in denying to a lis pendens purchaser the right to intervene in a suit after a compromise settlement between the original parties and pending a motion to dismiss the litigation pursuant to the compromise

settlement, where the litigation had been pending more than 12 years, and the rights attempted to be asserted by intervention were acquired more than eight years before.

GOODY, KOONTZ, SCHERR & SLAVEN, C. M. WHITT and F. B. SHANNON for appellants.

AUXIER, HARMAN, FRANCIS & HOBSON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 27, 1866, John Goosling, Richard Phillips and John Dils, procured a survey of 5,040 acres of land on the waters of Blackberry creek in Pike county, which was shortly thereafter patented to them. On March 25, 1866, George Hatfield obtained a survey for 1,165 acres, followed in due time by issual of a patent to him. It is agreed in this case that the Goosling, etc., patent was prior in time, as well as superior in rights, to the Hatfield patent, which to some extent lapped on the patent issued to Goosling and his associates. There were a number of exclusions from the Goosling patent, estimated to contain in the aggregate 2,000 acres. The title to all the lands covered by the Goosling patent was acquired by Wallace Williamson, who sold a portion of it in 1894 to one Lawson, trustee for Luther Kountz. The amount conveyed to Lawson was about 3,000 acres and was all of the land included in the Goosling patent on the left fork of Blackberry creek, and within which boundary lines was the tract involved in this litigation and estimated to be 200 acres. Prior to April 24, 1906, Kountz organized the Blackberry Coal Company and the 3,000 acres of land were conveyed to it by Lawson. On the last date mentioned the Blackberry Coal Company commenced in the Pike circuit court this equity action against Elias Hatfield to enjoin him from trespassing on a tract of land included within the boundaries of the 3,000 acre tract, estimated to contain about 200 acres and to recover a judgment against him for the sum of $500.00, representing the value of the timber appropriated by him off of that tract. Defendant, Hatfield, denied plaintiff's title and claimed title to the controverted land in himself. He claimed that it was not included in the Goosling patent, since it was a part of the exclusions therein, and he alleged that it was covered by the George Hatfield patent, and finally, that he and those under whom he claimed had acquired title to it by adverse possession. Numerous, as well as

voluminous, pleadings and amended pleadings were filed, and there were a number of trials of an issue out of chancery, in some of which plaintiff won and in others a verdict was obtained by defendant, but all of them were set aside on a motion made for the purpose. After each successive trial further preparations were made and the record became quite voluminous. While the cause was pending and perhaps after some of the trials above and on June 13, 1911, the plaintiff, Blackberry Coal Company, conveyed all of its holdings to Henry W. Beald, trustee, and he on November 17, thereafter, conveyed the same to the Pond Creek Coal Company, and it then filed its petition in the cause to be made a party plaintiff, which was done and the action was thereafter prosecuted in its name, substituted for that of the Blackberry Coal Company. It filed additional pleadings and amendments after that order was made, among which was one averring that in 1900 its remote vendor, Lawson, trustee, brought a similar suit against Joseph Hatfield, who was a remote vendee of defendant, Ellis Hatfield, involving the same land, and that it was adjudged in that case that plaintiff, Lawson, therein was the owner of the tract and that defendant, Joseph Hatfield, therein had no interest in it, and that the prayer of the petition was sustained. It was furthermore pleaded that Joseph Hatfield prosecuted an appeal to this court from that judgment and that it was affirmed in the case of Hatfield v. Kountz's Trustee, 31 Ky. L. R. 74.

On the 3rd day of March, 1910, the defendant, Elias Hatfield, entered into a contract with appellants, Guy White and R. W. Buskirk, whereby he agreed to sell to them all of certain described timber on the land in controversy, estimated to be 349 acres, at the price of $1.00 per tree, and they were given five years in which to enter upon the land and cut and remove the timber. It was further stipulated that Hatfield was to be advanced on the agreed price the sum of $100.00 on or before the May term, 1910, of the Pike circuit court, $25.00 of which was paid at the time, and the balance due under the contract to be paid when this suit was decided by the Court of Appeals of Kentucky in favor of Hatfield. More than two years thereafter, and on April 23, 1912, the same parties (appellants here) agreed to purchase from defendant Hatfield all the mineral under the land at $15.00 per acre, $10.00 of which was paid at the time and $40.00 to be paid

on or before the 14th day of May thereafter, and the balance to be paid when this suit was settled or adjudged in favor of defendant Hatfield. It was also expressly provided that unless the suit was so settled no other sum than the $50.00 should be due under the contract.

Appellants recorded their contracts but they made no effort to intervene in this cause or assert in any manner their rights growing out of them until March 10, 1919, practically thirteen years after the beginning of the litigation, and nine years after they acquired their interest in the timber, and seven years after their acquisition of the mineral. Prior to that date and on August 24, 1918, the appellee, Pond Creek Coal Company, bought its peace from the defendant, Elias Hatfield, and in consideration of $1,000.00, which it paid to him, he and his wife executed a quitclaim deed to the land in controversy, and when the intervening pleading of appellants was tendered there was a motion pending to dismiss the litigation pursuant to that compromise settlement. The court overruled the motion of appellants to file their pleadings and entered a judgment dismissing the action based on the compromise settlement, and to reverse that judgment the interveners (appellants) prosecute this appeal.

No reason is assigned why the intervening pleading was not offered sooner, but it is alleged therein that appellants had expended large sums of money in protecting their interests, though it does not appear for what purpose the expenditures were incurred except the $100.00 paid at the time and soon thereafter on the timber contract, and the $50.00 on the mineral contract. All the other sums alleged to have been paid must necessarily have been in behalf of defendant, Hatfield, in prosecuting the litigation. In the intervening pleading appellants averred that Hatfield was the owner of the land and entitled to a judgment in his favor, and that the taking of the quitclaim deed from him by the Pond Creek Coal Company did not relieve the latter of the duty to perform their contracts and they prayed that they be adjudged the owners of the timber on and the minerals under the land, and that the Pond Creek Coal Company be required to execute conveyances therefor.

It is first and properly insisted by counsel for appelless in support of the judgment that appellants were *lis pendens* purchasers, and that since Hatfield did not recover any portion of the land they are bound by the judgment dismissing the action, but whether the failure of

Hatfield to recover any of the land because of the compromise agreement and the payment to him of $1,000.00 would defeat the right of appellants to assert their claims, we need not determine. We are, however, of the opinion that the general doctrine which burdens the rights of such purchasers with the final adjudications in the cause would not apply to appellants under the facts of this case, where the adjudication was made to rest on facts arising after the purchase was made. The compromise settlement forming the basis of the dismissal order was entered into after appellants acquired their interests and they may not be bound as *lis pendens* purchasers because of that fact, since it had no existence at the time of their purchase and was not then a fact involved in the litigation. The *lis pendens* doctrine is not affected by the fact that the subsequent judgment was the result of an agreement or compromise, provided the settlement adjusted matters involved in the litigation at the time of the purchase; but where the agreed judgment is based on grounds not relied on at that time but arising afterwards the *lis pendens* purchaser is not bound thereby. 25 Cyc. 1476; 17 R. C. L. 1035, and Davis, et al. v. Wilson, 115 Ky. 639. Among the many authorities cited in that case was Van Fleet on Former Adjudications, vol. 2, section 586, page 1116, from which the opinion inserts this excerpt: ''A *lis pendens* purchaser is not affected by a decree made on new matter incorporated into the bill by way of amendment after his purchase.'' The facts of the Davis case were very analogous to those involved here and we think that opinion and the others referred to settle the question adversely to the contention of appellants.

But the same counsel also insist that under the practice generally, and as applied in this jurisdiction, a *lis pendens* purchaser *may* be allowed by the court to appear in the action and assert his rights, yet ''The court is not, however, bound to permit him to do so, in the absence of a statute conferring upon him this right;'' and the case of Roberts v. Cardwell, 154 Ky. 483, from which the quotation is made, is cited in support of that position, which we think sustains it. The rule of practice is also stated in 17 R. C. L. 1032, thus: ''One acquiring an interest *pendente lite* is sometimes, on his application, permitted to appear in the action and defend or prosecute in the place of the person to whose interest he has succeeded. The

court is not, however, bound to permit him to do so, in the absence of a statute conferring upon him this right."

Under the facts of this record we are convinced that if there was ever a case where the court was justified in denying the right it is this one. The litigation had been pending more than twelve years, and the rights attempted to be asserted by the intervention were acquired more than eight years beforehand. Trials had been had and verdicts set aside with the record constantly increasing. Also, as appears from the record, the lawyers at the local bar, including present and past judges, were disqualified from sitting in the case, they having at one time or another represented interested parties, and great difficulty was experienced in getting a special judge to try the case.

Moreover, the conduct of appellants in this case brings them nearly, if not entirely, to the line which would make them guilty of maintenance or barratry. Likewise their furnishing funds to the defendant for the purpose of prosecuting the litigation which was largely for their benefit would come near to if not actually make them parties to the litigation so as to make them bound by the merits of the case as developed by the record at the time the judgment they appealed from was rendered. That development shows that plaintiff was entitled to the relief it sought under the proven facts. which we could demonstrate if it were necessary or if it would serve any useful purpose to do so.

One issue in the cause deserves special mention. Defendant, Elias Hatfield, in an amended answer, averred that at the time the survey was made for the Goosling, etc., patent, the land involved in this litigation was in the possession of his remote vendor, George Hatfield; that it was included in the external boundaries of that patent, and that the surveyor who made the survey entered thereon this statement, "There being 2,000 acres of prior claim excluded out of said bounds, 200 acres, out of 2,000 excluded for George Hatfield, in the bounds of Netley (branch) by agreement," and that the 200 acres so excluded for George Hatfield was a part of the entire 2,000 acre exclusions from that patent and "that his claim is a portion of that exclusion, in said survey and patent." It was proven and adjudged in the case of Hatfield v. Kountz's Trustee, *supra,* that the written statement, "200 acres out of the 2,000 acres excluded for

George Hatfield in the bounds of Netley branch,'' was not on the copy of the survey filed in the land office at Frankfort, and that it was added on to the survey filed in the county clerk's office of Pike county after it had been filed and was, therefore, a forgery. Furthermore, it appears from the record in that case that Elias Hatfield was a witness in behalf of the appellant, his cousin, and to whom he had sold the land and being the same involved in this litigation. The remote vendor of appellees was the plaintiff in that suit, while the remote vedee of Elias Hatfield was the defendant therein, the latter having re-acquired his asserted title to the land after that litigation. It is contended that defendant and the appellants are bound by that judgment, but for the purpose of this case we need not determine the question or base our opinion thereon, since we are convinced that under the proven facts Elias Hatfield neither established his title nor defeated that of appellees. But, whether so or not, we are further of the opinion that the court did not abuse its discretion in declining to allow the intervening pleading to be filed.

Wherefore, the judgment is affirmed.