# CHARLESTON.

CENTRAL TRUST COMPANY *et als.* v. EMER M. HARLESS *et als.*

(No. 6517)

Submitted February 18, 1930.   Decided February 25, 1930.

*Beverley Broun, J. M. Woods* and *Price, Smith & Spilman,* for appellants.

*Harold A. Ritz* and *B. J. Pettigrew,* for appellees.

WOODS, JUDGE:

This is a suit to cancel certain purported title papers under which the defendants assert and claim ownership of the oil, gas and other minerals upon and underlying certain lands, situate in Lincoln County. An injunction was awarded inhibiting and restraining the defendants, their agents and employees from drilling upon and operating said property for oil and gas. The chancellor, after considering the pleadings, the exhibits therewith, and the agreed statement of facts, decreed plaintiffs the relief prayed for, and perpetuated the injunction aforesaid; and dissolved the interlocutory injunction awarded after the submission of the case enjoining United Fuel Gas Company (one of the plaintiffs) from drilling under its lease pending the litigation. From the decree, defendants appeal.

In 1874, J. Spencer Kennard, who claimed to be the owner of a large boundary of land, embracing approximately 12,000 acres, a portion of which is involved herein, instituted in the United States District Court, at Charleston, an action of ejectment against Thomas L. Oxley, Samuel S. Stone, Robert Breedlove, and others, alleging that they unlawfully withheld the possession of the described premises from him. Stone was in possession of and claimed title to five separate contiguous tracts of land (677 acres) within said boundary, three of which (202, 246 and 55 acres, respectively) had been patented to him about the year 1885 by the Commonwealth of Virginia. The other two (a 74 and a 100 acre tract), patented about the same time to Ephriam Griffith and Elias P. Vickers, respectively, were conveyed by the said patentees to the said Stone. Robert Breedlove was in possession of another tract claimed by him and each of the other numerous defendants was in possession of a separate tract, of which he claimed to be the owner. Stevens and Morgan succeeded to Kennard's interest February 7, 1881. On March 1, 1881 (the ejectment case still pending) Samuel S. Stone, by deed, conveyed to Robert T. Breedlove and wife three different tracts or parts of tracts of land involved in said suit, namely, the 100 acre tract conveyed by E. P. Vickers to said Stone, 37 acres from

the 74 acre tract conveyed by Ephriam Griffith, and 4 acres from the 55 acre tract patented to said Stone by the Commonwealth of Virginia. This deed was placed of record on January 25, 1882. The Breedloves moved onto the property immediately after delivery of the deed, claiming title thereto under said deed, resided in a dwelling house thereon and proceeded to clear, fence and cultivate the said land. On September 30, 1896, Breedlove and his wife conveyed a portion of the land bought from Stone to Abednego Hale who immediately entered into occupancy thereof, and has had the same fenced and under cultivation ever since that time. This deed was admitted to record October 6, 1896.

About forty years ago the said Breedloves opened a coal mine upon a portion of said land, and drove their entry for about one hundred feet thereunder and sold coal from said mine as it was needed by their customers in that neighborhood, employing a coal digger as his services were required for the purpose of mining said coal as it was purchased, ''and continued said mining operations from time to time as coal was sold by them'' until 1896 when, as already referred to, they conveyed that portion of said land to Abednego Hale. Hale later opened three other mines thereon, ''in two of which he drove his entry for about one hundred feet under the ground into the coal seam, and the third of which was opened at the outcrop on the bank of the creek, and sold the coal therefrom from time to time, as it was purchased by the people in the neighborhood who desired it, employing coal diggers when necessary for the purpose, and continued said operations and the selling of said coal to the people in the neighborhood who desired it until about 1915'', when the demand ceased because natural gas became available as fuel in that neighborhood. Both the Breedloves and Hales have paid taxes in fee on the property.

Notwithstanding his sale and conveyance to Breedlove and wife by deed of March 1, 1881, Stone, five months thereafter, entered into the following compromise agreement with the successors to Kennard's interests, to-wit: ''Memorandum of Agreement made this 1st day of August, 1881, between John W. Stevens of New York for himself and as attorney for E.

Morgan of Connecticut, and Samuel S. Stone of Lincoln County, West Va. The conditions of this agreement are that the said Stevens & Morgan agree to make a release or deed to said Stone for the following tracts of land that are within the bounds of Putney tract * * * and to release and discharge the said Stone from a suit in the United States Court at Charleston in which J. S. Kennard and P. M. Gardner are plaintiffs, and said Stone is one of the defendants, and the said Stone agrees to make a release or deed to said Stevens & Morgan for all the mineral and coal in said above tract of land except coal for domestic purposes. And each party agrees to pay their own costs in the above suit. Samuel S. Stone, John W. Stevens, Morgan & Stevens.'' Thereafter, on the 1st day of May, 1882, fourteen months after Stone's deed to the Breedloves, and over three months after it had been admitted to record in the office of the clerk of the county court of Lincoln County, the following order was made in the ejectment case by the District Court: ''This day came as well the plaintiffs by their Attorney A. Burlew, Esq., as the defendants S. S. Stone and T. L. Oxley by their attorney T. B. Swann, Esq., and it appearing that the plaintiffs and the said defendants have compromised their differences in this cause. It is ordered that this suit be dismissed as to the defendants S. S. Stone and T. L. Oxley according to two certain contracts in writing herewith filed marked 'A & B', respectively, and are in the words and figures following to-wit: [Here follows a recital of the compromise agreements already referred to.]''

The circuit court took the position that Robert T. Breedlove and Elizabeth Breedlove, through whom the defendants claim title, were *pendente lite* purchasers from Samuel S. Stone, and that the title of defendants to the minerals under said land was subordinate to that of the plaintiffs; and the defendants had not acquired title by adverse possession to said minerals.

The parties being in agreement as to the facts, the question of law is restricted to a narrow compass. The United Fuel invokes the doctrine of *lis pendens*. The Breedloves took their deed from Stone during the pendency of the ejectment suit, in which Stone and Robert F. Breedlove were parties

624

defendant. Generally, according to the common law doctrine of *lis pendens,* one who purchases from a party to a pending suit a part or the whole of the subject matter involved in the litigation takes it subject to the final disposition of the cause, and is bound by the decree or order that may be entered against the party from whom he derived title. *West Virginia Pulp, etc. Co.* v. *Cooper,* 87 W. Va. 781, 106 S. E. 55; *Rardin* v. *Rardin,* 85 W. Va. 145, 102 S. E. 295; *Newman* v. *Chapman,* 2 Rand. 93. While we have a statute (Code, Chapter 139, sections 14 and 15) requiring the filing of *lis pendens,* it applies only to suits to charge real estate with debts, and not to suits to recover it. *O'Connor* v. *O'Connor,* 45 W. Va. 354, 32 S. E. 276. Hence, in suits in ejectment the common law doctrine of *lis pendens* applies. It is the accepted doctrine in the Virginias that the effect of *lis pendens* is founded upon the necessity of such a rule to give effect to the proceedings of courts of justice. For without it the administration of justice might, in all cases be frustrated by successive alienations of the property which was the object of litigation, pending the suit, so that every judgment and decree would be rendered abortive where the recovery of specific property was the object. While some of the courts of other jurisdictions base the rule on the ground of publicity of legal proceedings, and a legal presumption of notice of what takes place therein, the great majority of such courts uphold the doctrine on the grounds of public policy and general convenience, recognizing that its existence and maintenance are necessary to any effectual administration of the law. The United Fuel making application of the rule to the facts here insists that Robert T. Breedlove and Elizabeth Breedlove as purchasers from Samuel S. Stone took subject to any adjudication of the title to the land in the ejectment suit.

The appellants, while admitting the effect of the doctrine of *lis pendens,* as hereinbefore announced, contend that it has no application here, because, *first,* that there was no adjudication of the ejectment suit; *second,* that if there was an adjudication it was based on a compromise, which amounts to a dismissal of the action; and *third,* that, in any event, such adjudication would not be binding on the Breedloves because

of the lack of diligence in prosecuting the case. Was there an adjudication? Recurring to the order in question, it will be seen that Stone appeared by his attorney; that the plaintiffs and defendants had compromised their differences in the cause; and that the suit was ordered to be dismissed as to the named defendants "according to two certain contracts in writing herewith filed, marked 'A & B', respectively, and are in words and figures following, to-wit", etc. It not only recites the fact that the defendants have compromised their differences but orders that the suit be dismissed according to the agreement which was made a part of said order. It was the final determination of the rights of the parties. In Freeman on Judgments (4th Ed.) sec. 38, it is said a judgment is not what is entered, but what is ordered and considered. This court approved this principle in *State* v. *Blair,* 63 W. Va. 635, 60 S. E. 795. It has also been defined to be a sentence of the law pronounced by the proper tribunal as result of the proceedings instituted before it. A judgment may be a conclusion of law upon facts found by the court or a conclusion of law upon facts found by a jury or as a corollary thereto (as in the ejectment suit) upon facts agreed upon by the parties to the litigation. The text writers are in agreement that it must be tested by its substance rather than by its form. So, if it appears to have been intended by some competent tribunal as the determination of the rights of the parties to an action and shows in intelligible language the relief granted, its claim to confidence will not be lessened by want of technical form, nor by the absence of language commonly deemed especially appropriate to formal judicial records. Freeman on Judgments (4th Ed.) sec. 47, and cases there cited. This is the general rule by which judgments or orders are to be tested. The dominant question is, was it intended to be a judgment? The entry by the court of the compromise agreement is a potent circumstance indicating the court's and disputants' intention of making it determinative finally of the rights of the parties concerned in the action or proceeding. The entry of a judgment in any case is a ministerial act and for the purpose of affording evidence of the judicial act. It will be regarded as sufficient to show an

adjudication if it shows on its face the relief granted and that the grant is made by the court in whose records the entry is written. The foregoing rules have been applied by the courts of other jurisdictions. We do not deem it necessary to review them, as each case is dependent upon the language employed in the controverted order involved therein. The court believes that the entry in question here was intended to be a judgment, and has all the essential qualities of a judgment.

The appellants would deny the application of the doctrine of *lis pendens* to the judgment herein on the ground that it was based on compromise. This is on the theory that the compromise diverted the case from its usual and expected course, and prevented the court from deciding the case within the issues and upon the evidence relative to those issues, existant at the time of Breedlove's purchase. The case of *White* v. *Pond Creek Coal Company*, 201 Ky. 212, 256 S. W. 30, is cited among other cases to uphold this proposition. There it was held that the *lis pendens* doctrine is not affected by the fact that the subsequent judgment was the result of an agreement or compromise provided the settlement adjusted matters involved in the litigation at the time of the purchase; but where the agreed judgment is based on grounds not relied on at that time but arising afterward, the *lis pendens* purchaser is not bound thereby. Measured by the foregoing rule, was the agreed judgment in the instant case based on grounds not relied on at the time of the Breedlove purchase? We do not think so. The ejectment suit involved the title to the entire boundary of land described in the declaration, which included the land claimed by the defendant Stone. The adjudication here involved the title of Stone to this land. There was no new matter incorporated in the litigation after Breedlove's purchase. The subject of the compromise agreement was this title. Instead of recovering the title to the land in fee by the compromise agreement, Stone took the title to the surface and the plaintiffs the title to the minerals. It logically follows that the ejectment suit remained unchanged as to the rights of the parties thereto. So, we conclude that the distinction made in the cases and authorities cited by the appellants and the case here under review is where agreements

were made involving considerations other than the subject matter of the litigation. A compromise is always one of the possible endings of all litigation. The Breedloves took their deed in view of such contingency. The policy of the law is to encourage compromise as a mode of adjusting conflicting claims, because such agreements promote peace, and the courts hold that the parties are concluded by such settlements. In the text of 38 C. J. 50 the general rule is announced that *pendente lite* purchasers are bound by the judgment or decree rendered in a suit, although it is the result of agreement or compromise. The only exception to this rule exists where the decree or judgment is a result of collusion between the parties. As the court aptly said in *Turner* v. *Babb*, 60 Mo. 350: "If the power to compromise in good faith be denied to them, the power to consent to any step in the cause, or proceeding at the trial, must also be denied." The compromise decree here, therefore, being good between the parties, the appellant, as a *pendente lite* purchaser, is bound thereby and takes only such title to the land embraced in the Breedlove deed as their grantor Stone took by the adjudication in the ejectment suit.

But, the appellants also seek to escape the effect of such adjudication on the ground that there was a lack of diligence in prosecuting the case. The authorities hold that effect will not be impaired by ordinary negligence and will only be lost by unusual and unreasonable delay. What constitutes unusual and unreasonable delay must be determined by the particular circumstances of each case. *Hayden* v. *Bucklin*, 9 Paige (N. Y.) 512. The only circumstance appearing upon the face of this record is that the ejectment suit was instituted in December, 1874, and the final order entered therein in 1882. Mere lapse of time does not indicate inexplicable or inexcusable negligence. 17 R. C. L. 1039. It is shown here that the plaintiffs were non-residents. The suit involved title to something like 12,000 acres. There were numerous parties defendant. We may fairly infer that the land was mostly unimproved and in forest. The surveys necessary to present each claimant's contention in regard to the title under which he claimed would necessarily involve a vast amount of time.

The court in which the action was pending sat only once or twice a year during the period of this litigation. One of the parties to the deed to the land in litigation, Robert Breedlove, was a party defendant to the ejectment suit. It does not appear that he made any effort to speed the cause. Admitting that there has been delay in the prosecution of the ejectment suit, Breedlove by his non-action would not be heard to complain now. His conduct, under the law, likewise binds the wife—his conferee in title. 12 C. J. 344; 15 R. C. L. 645. Under these circumstances we would not be warranted in holding that there was such undue delay so as to defeat the force of the suit on *pendente lite* purchasers of the real estate involved therein.

The remaining question for decision relates to adversary possession. It is contended by the appellants that whether the deed from Stone to the Breedloves is valid or not as to the minerals, it constituted color of title which, coupled with adverse possession for the statutory period, vested in them good title to the minerals underlying a portion of the land in controversy. Breedlove in 1896 conveyed that portion of the property herein involved to Abednego Hale, who entered into the occupancy thereof, resided in a dwelling house thereon, and has had the whole thereof fenced and under cultivation since that time. The mineral title and surface title were severed in 1882. The taxes on the several mineral rights were paid since that time by the appellees and their vendors. The appellants and their vendors have had the fee of the disputed premises assessed to them for a like period, and have paid taxes thereon. It is well settled under our decisions that where there has been a severance of the surface and the minerals, the possession of such surface is not possession of the minerals. *Thomas* v. *Young,* 93 W. Va. 555, 117 S. E. 909. *Coal Co.* v. *Burgess,* 86 W. Va. 16, 102 S. E. 690. *Lloyd* v. *Mills,* 68 W. Va. 241, 69 S. E. 1094. *Newman* v. *Newman,* 60 W. Va. 371, 55 S. E. 377. Since we have concluded that the Breedloves were *pendente lite* purchasers the application of the foregoing rule is proper here. Measuring the appellants' rights by the requisites of the doctrine of adversary possession, have they acquired title to the minerals? Except

for the occasional mining of coal, admittedly no such possession of the minerals was had. The Virginia court in *Morison* v. *Ass'n.*, 110 Va. 91, said in effect that minerals under the surface are not susceptible of actual possession. To have actual possession they must be mined. According to the agreed statement such mines were operated "from time to time" as coal was needed by customers in the neighborhood. Under the compromise agreement Stone reserved the right to use all of the coal necessary for domestic purposes. While this right may not in law have extended to Breedlove and his grantees, it seemed to have been so understood by them and Stone. Under such conditions the mining done would necessarily have to be done on a basis sufficiently large to repel the presumption that such mining was for purely domestic purposes. Admitting for the purpose of the case that the coal was sold as stated in the agreed statement, has the continuity of the mining of the property for coal, necessary to constitute adverse possession, been shown? The mining of property for coal occasionally does not constitute possession. One who depends upon mining a mineral to establish adverse possession must keep his flag flying in a visible and hostile manner. *Plummer* v. *Coal Co.*, 160 Pa. 483, 28 A. 853. This does not necessarily mean that the mining must be continuous. However, there must be such action on his part as to point out to the owner thereof that he is so claiming adversely to him. If he (the adverse possessor) would acquire any part of the mineral, he must make his entry upon and maintain his position within the limits of the mineral estate for the *requisite of time* in an open, notorious, and exclusive manner. *Delaware, etc. Canal Co.* v. *Hughes*, 183 Pa. 66, 38 A. 568, 38 L. R. A. 826, 63 Am. St. Rep. 743. As one of the essential elements to be shown where parties rely upon their adversary possession of the premises they must show that their possession has been continuous during a period necessary to give title under the statute of limitation (ten years). A break in the possession restores the seizin of the true owner. This rule is so well established in our decisions as to make citation of authority unnecessary. The mining shown here to be "from time to time" fails to establish the unbroken and continuous

possession required. His possession to be continuous must be such as will permit the superior claimant to sue him as a trespasser at any time during the ten years' period. *Wilson* v. *Braden*, 56 W. Va. 372, 49 S. E. 409, 107 Am. St. Rep. 927. He must show that the mining of the coal has been actual, open, notorious, *continuous*, exclusive and hostile under color of title. *Thomas* v. *Young, supra.* There is nothing to show that the expression "from time to time" with reference to the mining would preclude a conclusion that there may have been cessation of work for even a year or more at a time. All of the mining might have been done at three or four times, and the openings allowed to fall in. Hence, we cannot say that the appellants have shown the continuity of possession required of them under the law. Such finding renders a determination of the question of whether adverse possession of one mineral includes all unnecessary.

The decree of the circuit court must therefore be affirmed.

*Affirmed.*