**PERKINS v. SOUTHERN COAL CORP.**

**No. 302.**

United States District Court
S. D. West Virginia, Bluefield Division.

March 9, 1951.

---

E. Z. Duty, Bradshaw, W. Va., S. H. & Geo. C. Sutherland, Clintwood, Va., S. H. Sutherland, Clintwood, Va., for plaintiff.

Richardson, Hudgins & Hancock, Bluefield, W. Va., George Richardson, Jr., Bluefield, W. Va., Crockett & Tutwiler, Welch, W. Va., Joseph M. Crockett, Welch, W. Va., J. M. B. Lewis, Jr., Bluefield, W. Va., for defendant.

MOORE, Chief Judge.

Plaintiff in her bill of complaint alleges that she was possessed of all the coal and minerals underlying a certain tract of land situate on the Vance Fork of Panther Creek, a tributary of Tug River,

in McDowell County, West Virginia, and that while so possessed, the defendant entered upon the land and unlawfully mined, removed and converted the coal thereunder of the value of $700,000. Defendant having indicated that it would rely upon the defense of res adjudicata by reason of the record and judgment in a certain action of ejectment involving this same tract of land, wherein defendant's lessor was plaintiff and plaintiff's grantor was one of several defendants, plaintiff filed a supplemental complaint praying that the record and judgment in the ejectment action be declared null and void as to her, and that defendant be enjoined from using same as a defense herein.

On the basis of the pleadings in the instant case and the record and judgment in the ejectment action, defendant has moved for summary judgment, relying principally on the ground that the judgment is not subject to collateral attack.

The record in the ejectment action discloses that defendant's lessor, formerly known as the Pocahontas Coal and Coke Company, instituted an action in ejectment against plaintiff's grantor, Fanny E. Vance, and ten others, in the Circuit Court of McDowell County, West Virginia, in 1926, for the recovery of a 50,000 acre tract of land embracing the smaller tract here in dispute. At July rules 1926, the declaration was returned executed as to seven of the defendants, including Fanny E. Vance, and the common order, otherwise known as a conditional judgment, was entered as to them. At August rules, 1926, the common order was confirmed, this procedure being what is known as an office judgment, and a writ of inquiry was issued as to the seven defendants served. The entries at the rules held for July, August, September, and November, 1926, note that as to the four remaining defendants the case was continued for service of process. No further entry appears on the record until the filing of an amended declaration whose only apparent purpose was to add three new defendants. This amended declaration was made returnable originally to

April rules, 1930, but the name of the month was changed to October on the notice. The amended declaration was returned executed at April rules, 1930, as to the three new defendants and as to three of the four defendants to the original declaration who had not been previously served. At each rules thereafter, regular entries were made so that by October rules, 1930, process had been served, the common order confirmed, and a writ of inquiry issued as to each defendant.

The record next discloses an agreement between counsel for the plaintiff and J. N. Harman, Jr., counsel for all fourteen defendants, that attorney F. C. Cook preside as special judge upon the trial of the case, in lieu of the regular judge, who was disqualified by reason of some connection therewith. An order in accordance with that agreement was entered by the regular judge on April 11, 1931. A final order, entered June 18, 1931, by F. C. Cook, Special Judge, recites that inasmuch as the defendants failed to appear or plead to the plaintiff's original and amended declaration as ordered, their default is entered against them and the plaintiff is adjudged entitled to recover of the defendants the possession of the lands claimed by the plaintiffs. It is further set out in the order that the judgment shall not prejudice the claim of either the ejectment plaintiff or Fanny E. Vance to the surface of the tract here in dispute.

Plaintiff's contention that the judgment in the ejectment action is void as to her is based on the following grounds:

1. The action was discontinued long before final judgment was obtained by reason of the ejectment plaintiff's failure to have the case continued or any order entered therein from November rules, 1926, to April rules, 1930.

2. The attorney purporting to act as counsel for plaintiff's grantor and who signed the agreement authorizing F. C. Cook to preside as special judge was not authorized to do so.

3. No writ of possession has ever issued on the judgment in the ejectment action.

4. The action was not prosecuted with the diligence required by law to bind purchasers of the res or parts thereof during the pendency or purported continuance of the action.

■ It is well settled that a judgment rendered by a court purporting to have jurisdiction of the parties and subject matter cannot be attacked in a collateral proceeding by parties or privies unless it appears from the record of the proceeding in which the judgment was entered that the court acted without jurisdiction. Lemley v. Wetzel Coal & Coke Co., 82 W.Va. 153, 95 S.E. 646; 49 C.J.S., Judgments, § 401. The principal issue herein raised, namely, the determination of whether the Circuit Court of McDowell County lost jurisdiction of the cause by reason of a discontinuance occasioned by the ejectment plaintiff's failure to have any order entered therein from November rules, 1926, to April rules, 1930, goes to the very heart of the Court's jurisdiction. Since it can be determined from the facts as they appear upon the record, it is a proper subject for inquiry in this proceeding.

■ It is indisputably the rule at common law that whenever a plaintiff leaves a chasm in the pleadings or proceedings of his cause, as by not having the process continued or by not proceeding regularly at rules, the suit is discontinued by operation of law. 27 C.J.S., Dismissal and Nonsuit, § 2. The common law rule in West Virginia has been changed by Code, 56-6-8, which provides as follows: "All causes on the docket of any court, and all other matters ready for its decision which shall not have been determined before the end of a term, * * * shall, without any order of continuance, stand continued until the next term." Plaintiff argues that the common law rule has been abrogated by section 56-6-8 only as to those cases which are properly upon the court's docket and ready for hearing. She contends that the statute has no application to proceedings at rules, which, plaintiff says, was the status of the ejectment action throughout the period in which no order was entered. Support for plaintiff's argument as to the effect of section 56-6-8

being based on a distinction between those cases on the court's docket and those which are proceedings at rules, is found in Code, 56-6-1, which provides that the clerk shall, before every term, make out a docket of the cases to be tried or disposed of at that term. The cases construing section 56-6-1 hold that the proceedings at rules must have terminated so that the case has matured and is ready for trial before it can properly be placed on the docket. Bennett v. Farmers' Mutual Fire Association, 78 W.Va. 654, 90 S.E. 169; Higginbotham v. Haselden, 3 W.Va. 266.

Assuming for the moment that the ejectment action was not ready for hearing at the rule day following the entry of the order of continuance at November rules, 1926, I do not believe that any such distinction as plaintiff here seeks to draw is permissible. It is provided by Code, 56-8-9 that "Any court in which is pending any case wherein for more than two years there has been no order or proceeding but to continue it, * * * may, in its discretion, order such case to be struck from its docket; and it shall thereby be discontinued."

The defendant contends that, unless struck from the docket by order of the court, this section operates to continue all pending cases wherein no order or proceeding other than a continuance has been had for more than two years, and that since no order striking the case from the docket is to be found in the ejectment record, the case stood continued.

I have been able to find but one West Virginia case which touches upon this question, that being Millar v. Whittington, 87 W.Va. 664, 105 S.E. 907. There, the plaintiff commenced his suit in December, 1915, and sued out an attachment against certain real estate of the defendants, who were all nonresidents. Process was returned not executed. The plaintiff filed his bill at March rules, 1916. There were no further proceedings in the case until January, 1920, when the action was dismissed by the court on defendants' motion under the predecessor of section 56-8-9 which was in all respects like the present section except that before a case could be

dismissed it must have been pending four years rather than only two years. The defendants' motion was made on the ground that there had been no proceeding in the cause within four years. The plaintiff immediately moved for reinstatement of the case, contending that the filing of the bill constituted a "proceeding" within the meaning of the statute. The plaintiff's motion was denied, and on appeal the circuit court was reversed on that point which was the only question dealt with in the Court's opinion. The Supreme Court did not consider, in its opinion, whether the action, being one which the plaintiff had failed to have continued from term to term, was discontinued by reason of the proceedings at rules not having terminated. Certainly that action had not been proceeded in as far as the ejectment action here in question. But the Court must necessarily have concluded that the cause had not so abated, else its ruling ordering the case to be reinstated would have been improper.

█ I am of opinion, however, that the record clearly shows the ejectment action to have been ready for hearing, at least as to the seven defendants, including plaintiff's grantor, against whom an office judgment had been entered and a writ of inquiry issued. As to them, it was certainly a case required by section 56-6-1 to be placed by the clerk upon the court's docket at a time prior to November rules, 1926. It is to be noted that Code, 56-6-6, entitled "Time for Trial", provides as follows: "At the next term after an order at the rules for an inquiry of damages, such order may be executed and a final judgment rendered thereupon, unless good cause be shown for a continuance." And it is provided by Code, 56-4-53 that "Where, in any action against two or more defendants, the process is served on part of them, the plaintiff may proceed to judgment as to any so served, and either discontinue it as to the others or from time to time, as the process is served as to such others, proceed to judgment as to them until judgment be obtained against all."

█ By the clear import of these sections, it is obvious that the cause was at all times ready for hearing after the writ of inquiry had issued at August rules, 1926, for the ejectment plaintiff might have proceeded to judgment as to those served and either discontinued the action as to those not served or proceeded to judgment against them when they were served, until judgment was obtained against all. The case was therefore one which properly belonged on the docket of the court. It does not appear from the record whether the case was actually placed on the court's docket. That the clerk may have failed to perform his duty in this regard is immaterial. O'Brien v. Camden, 3 W.Va. 20.

█ Plaintiff's attempt to attack the record and judgment in the ejectment action on the ground that the attorney who appeared for plaintiff's grantor was without authority to act in her behalf must also fail. The record in the ejectment action discloses that an attorney appeared therein for plaintiff's grantor. As has already been pointed out, if plaintiff is to prevail in a collateral proceeding such as this, the want of jurisdiction must appear upon the face of the record. There being nothing on the face of the record to show the attorney's lack of authority, it would be necessary for plaintiff to introduce evidence dehors the record so to prove. It is settled in West Virginia that this cannot be done. Wandling v. Straw, 25 W.Va. 692.

Defendant has cited a number of cases which are offered to support her contention in this regard. It is apparent from a study of those cases that they are clearly distinguishable from the case now before me. Foremost among them is Shelton v. Tiffin, 6 How. 163, 47 U.S. 163, 173, 12 L.Ed. 387. That case involved an attack upon a judgment rendered in an action in which the plaintiff had brought suit against two persons, one a resident and the other a nonresident. The record showed that process was not obtained upon the nonresident defendant, and, although an attorney appeared for both defendants,

it did not appear that he had authority to waive process for the nonresident defendant. The Court held that the nonresident was at liberty to show that such an appearance was unauthorized, and that upon such a showing, he would not be bound by the proceedings of the court, whose judgment, as to him, was a nullity. The Court was careful to point out that had the entry upon the record been that the nonresident defendant came personally into court and waived process, it could not have been controverted.

The record of the ejectment action in the instant case reveals that plaintiff's grantor was served with process. It is clear that the rule enunciated in the Shelton case and supported by other authorities cited by plaintiff can have no application here. 49 C.J.S., Judgments, § 424.

 Plaintiff next contends that the ejectment judgment is void as to her because no writ of possession was issued under it. Suffice it to say that a successful plaintiff in an action of ejectment, as well as those claiming under him, may enter and take possession of the premises independent of process, if that can be done peacefully. 28 C.J.S., Ejectment, § 121. Certainly, possession of the coal was taken by the ejectment plaintiff. Otherwise, this suit would not have been brought to recover for its removal.

 Finally, it is claimed by plaintiff that the ejectment action did not have the effect of lis pendens as to her because it was not prosecuted with the diligence required to bind purchasers of the res. This contention is based on the fact that no action had been taken in the ejectment suit for more than three years when plaintiff acquired her paper title from Fanny E. Vance by deed of conveyance dated February 1, 1930. A like contention, based on facts quite similar to those in the case now before me, was dealt with in Central Trust Co. v. Harless, 108 W.Va. 618, 152 S.E. 209. It was there stated that the effect of lis pendens is lost only by unusual and unreasonable delay, and that such delay must be determined from the particular circumstances of each case.

The Court went on to point out that mere lapse of time does not indicate inexplicable or inexcusable negligence. The authorities are in accord with the view taken by the Supreme Court of West Virginia. 54 C.J.S., Lis Pendens, § 29. If plaintiff is to avoid the effect of the doctrine of lis pendens on the ground that there was an unreasonable delay in the prosecution of the action, she must carry the burden of so proving. Norris v. Ile, 152 Ill. 190, 38 N.E. 762. Since nothing has been offered by plaintiff to show the delay to have been unreasonable, I must also overrule her contention in this regard.

 Moreover, even though plaintiff had been sustained in her claim that the ejectment action did not have the effect of lis pendens as to her, defendant's motion for summary judgment cannot be denied for yet another reason. Plaintiff's claim is based on adverse possession, and, if she is to prevail, she must tack her own possession to that of her grantor in order to make out an adverse holding for the statutory period of ten years. This arises from the fact that the judgment in the action of ejectment, rendered less than fifteen months after plaintiff's purchase, effected a severance of the minerals from the surface. It has long been settled in West Virginia that adverse possession of the surface, following severance of the minerals therefrom, does not affect the rights of those owning the mineral interests. The rule is not altered by the fact that the severance does not occur until after the adverse possession has commenced. Central Trust Co. v. Harless, supra. It is likewise immaterial that the adverse possessor had no notice of the severance. United Fuel Gas Co. v. Dyer, 4 Cir., 185 F.2d 99.

 The judgment in the action of ejectment foreclosed any right which plaintiff's grantor might have asserted to the coal and minerals underlying the tract in dispute. Since the possession of the grantor following commencement of the ejectment action could not serve to ripen title in the grantor, neither is it available to her grantee who must take the grantor's possession with all of the infirmities

**14**

attaching to it. Of course, a purchaser who is not bound with notice of an action of ejectment and who, during the pendency of that suit, acquires title to land which is the subject thereof, could enter and hold adversely from that date for the ten year statutory period, and thereby mature her title regardless of the fact that judgment is entered against the grantor following the date of purchase. Certainly, however, such a purchaser is bound by the adjudication in the pending suit that her grantor's possession is unlawful when she seeks to tack that possession to her own so as to make out the statutory period. United Fuel Gas Co. v. Dyer, supra.

Plaintiff has raised a number of other objections to the ejectment proceeding, none of which has been seriously pressed on argument. Inasmuch as they in no way aid the plaintiff's case, it would serve no useful purpose to dwell upon them in this opinion.

Defendant's motion for summary judgment is therefore sustained. An order has been entered accordingly.