Harold D. HAYES et al., Appellants,

v.

Joe C. MARSHALL, Individually, etc., et al., Appellees.

Court of Appeals of Kentucky.

Nov. 9, 1973.

W. Pelham McMurry, Paducah, for appellants.

Waller, Threlkeld & Whitlow, Samuel Carlick, Paducah, for appellees.

CULLEN, Commissioner.

The purposes of this action were (1) to enjoin the developers of a subdivision from erecting buildings in the subdivision in violation of the restrictive covenants that were recorded when the subdivision was platted, (2) for damages, and (3) for a declaration of invalidity of the county planning and zoning commission's approval of abolishment of the lot lines in the original subdivision and the making of a resubdivision of the tract for less restricted uses (which did not involve any rezoning). The action originally was commenced in the name of the owner of the only lot in the original subdivision that had been sold by the developers, and in the names of six other persons who had taken an option to purchase from the owner of that lot. A motion to dismiss the action as to the latter six persons was made on the ground that they had no standing to maintain the action. The six persons then *bought* the lot from the owner and moved for permission to file an amended complaint in which they were designated as the sole plaintiffs and asserted their rights as owners of the lot. The circuit court sustained the motion to dismiss the original complaint as to the six persons, but also sustained their motion for permission to file the amended complaint. However, the court then entered judgment dismissing the amended complaint, on the basis of findings of fact and conclusions of law in which the court ruled that the plaintiffs had no standing to maintain the action, but in which the court nevertheless held that the restrictions as to the original subdivision had effectively been abolished and even if not, would not be violated by the developers' plans to build an extensive apartment-building complex on the tract. The plaintiffs have appealed from the judgment.

It appears that the ground on which the plaintiffs were held not to have standing to maintain the action was that their maintaining of the action constituted champerty or maintenance. It is true that the plaintiffs' interest in enforcing the restrictions is traceable to the fact that they own lots in adjoining subdivisions, the value of which might be depreciated if the subdivision in question were developed for an apartment-building complex. It also might be considered that the plaintiffs' original participation in the action partook of champerty or maintenance, because they agreed to finance the action brought in the name of the original lot owner. However, the question is whether their maintaining of the action, after having bought the lot outright, falls within the category of champerty or maintenance.

■ In a firm line of cases this court has held that the mere fact that property is involved in litigation does not render a purchase of that property champertous, and that the subsequent prosecution of the litigation by the purchaser does not constitute maintenance. See Chiles v. Conley's Heirs, 9 Dana 385; Frasure v. Northern Coal & Coke Co., 189 Ky. 574, 225 S.W. 479; White v. Pond Creek Coal Co., 201 Ky. 212, 256 S.W. 30; Pond Creek Coal Co. v. Hatfield, 228 Ky. 806, 16 S.W.2d 442. Under those cases the plaintiffs in the instant case were not barred from prosecuting the action, after they had purchased the lot, and the trial court therefore erred in holding that they did not have standing to maintain the action.

It does not follow, however, that the plaintiffs are entitled to the *relief* they sought—a matter which we shall now discuss.

■ We think no significance need be attached to the purported abolishment of the lot lines, by the planning and zoning commission, because such action could not and did not destroy or impair the *contractual* obligation of the developers, to the lot owner, to conform to the restrictions. See Bellemeade v. Priddle, Ky., 503 S.W.2d 734 (1973). Therefore, there is no need for a judgment declaring the action of the zoning commission to be invalid, it being inconsequential as concerns any rights of the plaintiffs.

■ With respect to the claimed violation of the restrictions, by the developers, we think there is no basis at the present time for relief by way of damages, because no damages have yet occurred; there is only the threat of damages from future violation of the restrictions.

This leaves the question of whether the plaintiffs are entitled to injunctive relief. The governing principles are, as stated in 20 Am.Jur.2d, Covenants, Conditions, Etc., sec. 313, p. 876:

> "Broadly speaking, the enforcement of building restrictions is governed by equitable principles, and will not be decreed if, under the facts of the particular case, it would be inequitable and unjust, or not in furtherance of public interest. Whether injunctive relief will be granted to restrain the violation of such restrictions is a matter within the sound discretion of the trial court, to be determined in the light of all the facts and circumstances, and the appellate court will not interfere unless such discretion is manifestly abused. The complainant's right to insist on the restrictive covenant and to invoke the injunctive power of the court must be clear and satisfactory * * *".

■ While the trial court, in its findings of fact and conclusions of law, spoke of the plaintiffs' having "no standing to maintain this action because of insufficient interest" and of their being "barred by waiver and estoppel," we think it is plain that the court simply was weighing the equities, and finding that under all of the facts and circumstances relief by injunction was not warranted. We find no basis for interfering with that decision.

It is to be remembered that only one lot had been sold out of the 50 originally platted. The original hopes and plans for the subdivision had not materialized, and the developers were concerned about the future of their investment. Their substantial economic interests would be promoted by redesigning the subdivision. As against those interests was the interest of the owner of the one lot that had been sold, in protecting the value of that lot. That value, as evidenced by the price paid by the plaintiffs, was around $18,000. It would seem that any impairment of that value that might occur could adequately be compensated for by payment of damages, and that the protectable interest of the plaintiffs in the single lot is not of such magnitude as to warrant a permanent enforcement by injunction of the restrictions on the remainder of the subdivision.

Another factor entering into the consideration is that the plaintiffs purchased the lot in the midst of the litigation, with full knowledge of the efforts made and expense incurred by the developers in seeking to change the use of their land. Also, some significance may be given to the fact that the plaintiffs' main interest is to protect the value of their property located outside the subdivision, which interest the restrictions in question were not designed to protect.

Although we are upholding the trial court's decision to deny injunctive relief, and although we are holding that no basis for present recovery of damages has been shown, we believe it is proper for us to review the trial court's ruling on the question of whether the proposed use of the land by the subdividers will violate the restrictions. We quote the relevant portion of the restrictions:

"RESTRICTIONS:

1. AREA OF APPLICATION: The restrictions as stated herein shall be binding on all parties within the Merrywood Subdivision in their entirety.

2. BUILDING LINE: No building shall be constructed on the lots closer than the minimum building lines as shown on the plat for the front lot line.

3. RESIDENTIAL STRUCTURE: The ground floor area of the main structure, exclusive of one-story open porches, carports, and garages, shall be not less than 1040 square feet for a one-story dwelling, nor less than 800 square feet for a dwelling of more than one story.

4. LAND USE: No lot shall be used except for residential purposes only. No business activities of any type may be carried on within the Merrywood Subdivision.

A. The lots within Blocks A and D are for single family dwellings not to exceed 2½ stories in height.

B. The lots within Blocks B and C may be used for multi-purpose dwellings consisting of apartment buildings and duplexes and the lot lines within Block B and C may be built over and across in the event a multi-purpose type residence building is constructed within these blocks.

C. No building shall be erected, altered, placed, or permitted to remain on any lot within the Merrywood Subdivision other than single or multi-family residences or apartments as described within this section of land use."

■ The immediate plans of the developers are to construct apartment buildings only in the area designated on the original plat as Blocks B and C, but they claim the right, and the circuit court upheld it, to construct apartment buildings also in the area designated as Blocks A and D. Since we are holding that the restrictions remain in force, and since they, in Item 4A, unequivocally restrict Blocks A and D to single family dwellings, it is clear that the claimed right as to Blocks A and D does not exist, and the trial court erred in upholding that right.

The difficult question is whether the restrictions in Item 3, as to square-foot area, apply to apartment units or only to single-family dwellings. The evidence was that the dwelling-unit areas of the proposed apartments would be 565 square feet for one-bedroom apartments and 746 square feet for two-bedroom apartments, both being less than the minimum set forth in Item 3. So if Item 3 applies to apartment units, the proposed apartments will be in violation of the restrictions.

■ In undertaking to construe the restriction in question we invoke the rule in this jurisdiction that building restrictions are to be regarded more as a protection to the property owner and the public than as a restriction on the use of property, and hence will not be strictly construed. See Dorsey v. Fishermen's Wharf Realty Company, 306 Ky. 445, 207 S.W.2d 565; McFarland v. Hanley, Ky., 258 S.W.2d 3; Brandon v. Price, Ky., 314 S.W.2d 521; Macy v. Wormald, Ky., 329 S.W.2d 212. However, if the language is so ambiguous that its meaning cannot reasonably be ascertained, the court will not undertake to create a restrictive meaning. See Connor v. Clemons, 308 Ky. 9, 213 S.W.2d 438.

The general structural form of the restriction document and the use of the word "dwelling" in both Item 3 and Item 4B evidence an intent that Item 3 should include apartment units. However, the use of the word "structure" in Item 3 indicates the intent only to limit external building dimensions rather than interior living space, so that an apartment *building* meeting the minimum dimensions would be acceptable although the individual occupancy units did not meet those dimensions. If "structure" was intended to mean internal living space there was no need to exclude open porches, carports and garages. The word "structure" itself, as related to buildings, has the connotation of an entire building rather than an interior unit of a building. As a further consideration, it would seem that the obvious overall purpose of the restrictions, to fix standards to protect property values, would more likely be accomplished by putting a minimum on external rather than internal dimensions.

Even under a liberal construction, we believe that Item 3 does not apply to individual apartment occupancy units in apartment buildings authorized under Item 4B. We conclude therefore, that the proposed apartment buildings for Blocks B and C will not violate Item 3.

The judgment simply dismissed the complaint. In affirming that judgment we do not affirm any conclusions of law of the trial court that are not in conformity with this opinion.

The judgment is affirmed.

All concur.